644 So.2d 90 (1994)
Jane M. EICHELKRAUT and Wallace Eichelkraut, Appellants/Cross-Appellees,
v.
KASH N' KARRY FOOD STORES, INC., Appellee/Cross-Appellant.
No. 93-03644.
District Court of Appeal of Florida, Second District.
August 26, 1994.
*91 Lawrence J. Robinson, of Robinson & Robinson, Sarasota, for appellants/cross-appellees.
Paul D. Ley and Amy Harris, of Haas, Austin, Ley, Roe & Patsko, P.A., St. Petersburg, for appellee/cross-appellant.
CAMPBELL, Acting Chief Judge.
Appellants, Jane M. Eichelkraut and Wallace Eichelkraut, challenge the trial court's order granting appellee, Kash N' Karry Food Stores, Inc. (K & K), a new trial. K & K cross-appeals asserting evidentiary errors alleged to have occurred during trial. We reverse in regard to the Eichelkrauts' appeal and affirm on the cross-appeal because we conclude that the Eichelkrauts' attorney's closing argument was not of such a nature as to deny K & K a fair trial.
The Eichelkrauts sought damages for injuries Mrs. Eichelkraut sustained when she fell in a hole in a K & K parking lot and broke her ankle. The jury awarded Mrs. Eichelkraut $45,625.24 in damages and awarded nothing to Mr. Eichelkraut. K & K moved for a new trial and a judgment notwithstanding the verdict, alleging in paragraph 10 of that motion as follows:
10. Plaintiff's counsel's closing argument was highly inflammatory and outside the bounds of reasonable closing argument. Plaintiff's counsel repeatedly referred to KASH N' KARRY as a multimillion dollar corporation (or words to that effect) in spite of a total lack of any evidence to that effect in the record of this case and in spite of the fact that Defendant's status and/or wealth had absolutely no relevance to any issue in this cause. This was particularly heinous in light of the fact that Plaintiff's counsel continuously objected to defense counsel's efforts to present the tax returns of the Plaintiff essentially on the basis that they show the Plaintiff had a lot of money and that the jury would, therefore, hold it against the Plaintiff that the Plaintiff had a lot of money. Notwithstanding his repeated objections on this score, Plaintiff's counsel repeatedly emphasized during closing argument the size and wealth of KASH N' KARRY, and at one point even suggested that KASH N' KARRY, this huge corporation, is simply attempting to "squash the Plaintiff like a bug." Defense counsel objected to this remark and requested a curative instruction, and the court granted an instruction to the effect that defense counsel has objected to Plaintiff's counsel's remarks as being inflammatory, and this has been sustained. Unfortunately, Defendant contends that there was no proper curative instruction which could have been given once this statement was made, that the *92 statement was highly inflammatory and intended to incite the passions of the jury and calculated to cause them to base a verdict on the Defendant's status and wealth and not on the evidence in the case. For all the foregoing circumstances described above, this effectively prevented the Defendant from a fair trial, and Defendant is entitled to a new trial. Defense counsel will shortly order a transcript of the closing argument in question and file this with the Court to supplement this motion, and Defendant's counsel intends to incorporate herein the entire closing argument taken as a whole on the basis that allowing the case to be decided by the jury after this closing argument, constitutes fundamental error and warrants a new trial.
In granting K & K's motion for a new trial, the trial judge specifically stated that his ruling was based on the allegations contained in paragraph ten of K & K's motion and on his finding that "Plaintiffs' counsel's remarks were of such a nature and quality as to inflame the passions of the jury and thereby deny Defendant a fair trial." After carefully studying the transcript of the closing arguments in the case, we cannot agree that the remarks and the manner in which they were made warrant the granting of a new trial.
In K & K's motion, it alleged that plaintiffs' counsel "repeatedly referred to Kash N' Karry as a multi-million dollar corporation (or words to that effect)." Our review of the record of the closing argument reveals that plaintiffs' counsel, on two occasions, and without objection from K & K's counsel, referred to K & K's "multi-million dollar shipping facility" and "multi-million dollar store." Those references were addressed to the comparative negligence issue. The first instance concerned the relative ability of the owner (K & K) or "manager of a multi-million dollar shopping facility" to observe and repair hazards on its property as compared to the ability of a shopper (Mrs. Eichelkraut) to observe and avoid such a hazard. The second instance, directed at K & K's store manager's testimony that he did not know if K & K owned the parking lot or not, was "You give a manager a multimillion dollar store and you don't even tell them that the parking lot is his, too. Isn't that something."
In plaintiffs' counsel's closing rebuttal argument, he attempted to rehabilitate Mrs. Eichelkraut's credibility which had been severely attacked by K & K's counsel in his closing argument. In plaintiffs' counsel's opening summation to the jury, he argued in reference to "the pain and suffering and the disability and the anguish and the hell that they've been through as a result of Kash N' Karry... ." There was no objection to that argument but, instead, counsel for K & K argued in his closing:
I couldn't help but note during the course of his argument that, although he indicated in the beginning so many times, what he seemed to be trying to do was raise your emotions with talk about multimillion dollar property when there was no evidence of that with talk about her living in hell, which is certainly a gross distortion and exaggeration.
Finally, in attempting to rehabilitate his client's testimony, plaintiffs' counsel argued:
She did her best and she tried to tell you the facts, and she was nervous and afraid. She still is. And the hell that I talked about is the hell of being a victim at the hands of Kash N' Karry Corporation and being squashed like a bug under the heel of Kash N' Karry Corporation.
K & K's counsel objected to the final argument and requested a curative instruction to the jury. The objection was sustained, the curative instruction was given as requested, and the matter was submitted to the jury for deliberation. No motion for mistrial was ever made. K & K's counsel obtained the only remedy requested, a curative instruction.
We have held in such situations that a failure to request a mistrial, after an objection to improper statements in a closing argument has been sustained, constitutes a waiver of the objection. Newton v. South Florida Baptist Hosp., 614 So.2d 1195 (Fla. 2d DCA 1993), rev. denied, 621 So.2d 1066 (Fla. 1993).
We have also held that where a trial judge grants a new trial on the basis of *93 unpreserved error, it is not a matter of discretion and the ruling will be upheld only if the error is, as a matter of law, fundamental. Wasden v. Seaboard Coast Line R.R. Co., 474 So.2d 825 (Fla. 2d DCA 1985), rev. denied, 484 So.2d 9 (Fla. 1986). The alleged errors utilized to grant a new trial in this case are clearly unpreserved. Most of them were not the subject of any objection by K & K's counsel, and the one objection that was made was sustained. While a new trial may be based on conduct by counsel in closing argument without an objection, such conduct must be so pervasive, inflammatory and prejudicial as to preclude the jury's rational consideration of the case. Id. Plaintiffs' counsel's remarks did not rise to that level of pervasive influence so as to constitute the fundamental error necessary to support an order for a new trial. We caution counsel, however, that the rights of parties litigant should be determined after a fair and impartial trial that is not improperly influenced by the rhetoric of counsel. While certain conduct of counsel may not rise to the level of reversible error, any unseemly conduct that lowers the professional reputation of the Bar and brings disrepute to our judicial system should be curtailed.
We, therefore, reverse and remand with instructions to reinstate the final judgment for the Eichelkrauts.
SCHOONOVER and HALL, JJ., concur.