Amy MATHIAS and Eugene Mathias, Individually and as Husband and Wife, Plaintiffs-Appellants-Cross Respondents,†

v.

ST. CATHERINE'S HOSPITAL, INC., a non-stock domestic corporation, Defendant-Respondent-Cross Appellant,

SENTRY INSURANCE, A Mutual Company, Dr. Raymond Witt and Physicians Insurance Company of Wisconsin, Inc., Defendants.

Court of Appeals

*No.  96–1632.  Submitted on briefs June 5, 1997.—Decided July 30, 1997.*

(Also reported in 569 N.W.2d 330.)

†Petition to review denied.

540

541

On behalf of the plaintiffs-appellants-cross respondents, the cause was submitted on the briefs of *Walter W. Stern* of Union Grove.

On behalf of the defendant-respondent-cross appellant, the cause was submitted on the briefs of *John A. Nelson* and *Timothy W. Feeley* of *von Briesen, Purtell & Roper, S.C.* of Milwaukee.

Before Snyder, P.J., Brown and Anderson, JJ.

SNYDER, P.J.    Amy and Eugene Mathias appeal from a summary judgment dismissing St. Catherine's Hospital, Inc., and Sentry Insurance (collectively, St. Catherine's) from their medical malpractice action and from an order denying reconsideration. First, the Mathiases claim that the trial court erred in granting summary judgment to St. Catherine's as there are genuine issues of material fact in dispute. They base this on their contention that the hospital owed a duty to Amy to prevent her physician from performing a tubal ligation (sterilization) for which there was no signed consent form. Second, the Mathiases argue that the

545

trial court wrongly denied their motion for reconsideration in light of newly discovered evidence. St. Catherine's cross-appeals from the trial court's denial of taxable costs, attorney's fees and disbursements.

We conclude that St. Catherine's fulfilled its duty of ordinary care to Amy and therefore is not liable. Consequently, we affirm the trial court's grant of summary judgment; however, on the issue of the cross-appeal, we reverse and remand for further proceedings.

Amy was a patient of Dr. Raymond Witt during her pregnancy. On February 2, 1993, a full-term son was delivered via Cesarean section while Amy was under general anesthesia. The Mathiases have two other children. While in the operating room, Witt indicated that he needed a particular instrument which would be used in a tubal ligation. Nurses Tina Snyder and Doreen Perri, employees of St. Catherine's, both looked at Amy's chart and Snyder informed Witt that she did not see a signed consent form for that procedure. In deposition testimony, Snyder stated that Witt replied, "Oh, okay." While not refuting this, Eugene testified in his deposition that this exchange did not occur "in my presence that I could hear" and thus he could not fully refute or corroborate whether the exchange occurred. There is a dispute as to what happened after Witt was informed by Snyder that she could not find a consent form in the chart but that is not material to the issue before us.[1]

Witt performed a tubal ligation. Three days after the procedure had been done, a nurse brought Amy a

---

[1] Snyder testified in her deposition that Witt had a conversation with Eugene about the sterilization and that Eugene gave verbal consent. Eugene, in his deposition, "absolutely" denies that the conversation took place or that he gave consent for the sterilization.

consent form for the procedure. This nurse told Amy that the form was "just to close up our records." Nurse Paula Yurchak testified in her deposition that she signed Perri's name on that same consent form and back-dated it February 2, 1993, the day the surgery was performed. As the trial court noted in its oral decision granting summary judgment, these actions after the surgery are immaterial to the issue of the hospital's duty to Amy.[2]

We review a decision on summary judgment de novo, applying the same methodology as the trial court. *See Armstrong v. Milwaukee Mut. Ins. Co.*, 191 Wis. 2d 562, 568, 530 N.W.2d 12, 15 (Ct. App. 1995), *aff'd*, 202 Wis. 2d 258, 549 N.W.2d 723 (1996). We first examine the complaint to determine whether it states a claim and then the answer to determine whether it presents a material issue of fact. *See Jones v. Dane County*, 195 Wis. 2d 892, 912, 537 N.W.2d 74, 79 (Ct. App. 1995). If each does, we then examine the documents offered by the moving party to determine whether that party has established a prima facie case for summary judgment. *See id.* If it has, we look to the opposing party's documents to determine whether any material facts are in dispute which would entitle the opposing party to a trial. *See id.*

---

[2] The trial court stated: "The spoilation occurred after the fact. Certainly it was not appropriate. Certainly it was, if it occurred in the way it did for the reasons the plaintiff claims, it was reprehensible; but it didn't create any damages; and therefore, whether it is or is not a separate cause of action I think is immaterial. It can be raised as evidence in the case but certainly doesn't plead a separate cause of action."

■

The law in Wisconsin on informed consent is well settled. In *Scaria v. St. Paul Fire & Marine Ins. Co.*, 68 Wis. 2d 1, 18, 227 N.W.2d 647, 656 (1975), the court held that the duty to advise a patient of the risks of treatment lies with the doctor. In that case, a patient became paralyzed from the waist down after a diagnostic test which involved injecting dye into his system. *See id.* at 8, 227 N.W.2d at 651. The court was explicit in pointing out that the duty to obtain informed consent lay with the doctor, not the hospital.[3] *See id.* at 18, 227 N.W.2d at 656.

The duty of the doctor to ensure that a patient gives an informed consent to any medical treatment is codified in § 448.30, STATS., which requires:

> Any physician who treats a patient shall inform the patient about the availability of all alternate, viable medical modes of treatment and about the benefits and risks of these treatments. The physician's duty to inform the patient under this section does not require disclosure of:
>
> **(1)** Information beyond what a reasonably well-qualified physician in a similar medical classification would know.
>
> **(2)** Detailed technical information that in all probability a patient would not understand.
>
> **(3)** Risks apparent or known to the patient.
>
> **(4)** Extremely remote possibilities that might falsely or detrimentally alarm the patient.
>
> **(5)** Information in emergencies where failure to provide treatment would be more harmful to the patient than treatment.

---

[3] The hospital was found to have been negligent with regard to postoperative care.

(6) Information in cases where the patient is incapable of consenting.

■ This statute is the cornerstone of the hospital's duty in this case. We note that the legislature limited the application of the duty to obtain informed consent to the treating physician. While the record is littered with semantic arguments about whether this is a case of nonconsent or lack of informed consent, what the Mathiases seek is to extend the duty of ensuring informed consent to the hospital.

Wisconsin has addressed a facet of this issue in *Dumer v. St. Michael's Hosp.*, 69 Wis. 2d 766, 233 N.W.2d 372 (1975). In that case, the plaintiff sued for the wrongful life of her daughter on the premise that, inter alia, the nurses at St. Michael's were negligent in failing to diagnose the mother's rash as rubella and in failing to ask whether she was pregnant. *See id.* at 770, 233 N.W.2d at 374. The baby was born with severe birth defects caused by the rubella. *See id.* at 769, 233 N.W.2d at 374. The court discussed the duty of the hospital in that situation as follows:

> Under these factual allegations, we conclude the hospital did not breach a duty owed to Carol Dumer. Hospital employees, either nurses or attendants, are not legally competent nor legally required to make a medical diagnosis without direction and supervision of a licensed physician. The hospital employees, under the circumstances alleged here, exercised ordinary care and thus performed the duty owed to the patient—they admitted the patient and called a doctor. . . . Nurses and attendants, under these facts, are not required to make a temporary diagnosis nor advise the patient as to a course of treatment.

*Id.* at 770–71, 233 N.W.2d at 374 (footnotes omitted).

Our position is further supported by other jurisdictions which have held to the principle that "[t]he duty to inform rests with the physician and requires the exercise of delicate medical judgment." *Ackerman v. Lerwick*, 676 S.W.2d 318, 321 (Mo. Ct. App. 1984). Courts have also recognized that the physician-patient relationship is "one of great delicacy . . . [and] a third party should not ordinarily meddle." *Fiorentino v. Wenger*, 227 N.E.2d 296, 300 (N.Y. 1967). A cogent explanation of the reasons for adopting this principle was set out in *Kelly v. Methodist Hosp.*, 664 A.2d 148, 151 (Pa. Super. Ct. 1995), in which the court held:

> Beyond our conclusion Pennsylvania law does not recognize the cause of action asserted by appellants, we find compelling reasons for not imposing upon hospitals the duty of obtaining informed consent. It is the surgeon and not the hospital who has the education, training and experience necessary to advise each patient of risks associated with the proposed surgery. Likewise, by virtue of his relationship with the patient, the physician is in the best position to know the patient's medical history and to evaluate and explain the risks of a particular operation in light of the particular medical history.

Wisconsin has embodied this principle in § 448.30, STATS., which provides specific guidance for physicians to determine what information needs to be revealed while not unduly alarming the patient.

The plaintiffs heavily rely on *Fiorentino* to support their position that the nurses were obligated to intervene to determine Amy's wishes. It should be noted that the court, in that case, held that the hospital did not have the duty that the Mathiases seek to have imposed. *See Fiorentino*, 227 N.E.2d at 299. That case

involved a fourteen-year-old boy who died after undergoing a radical operation to correct a curvature of his spine. *See id.* at 297–98. The doctor was found to be liable for failing to get the informed consent of the boy's mother. *See id.* at 298–99. The issue on appeal was "whether the hospital was guilty of any breach of duty owed by it to the patient or his parents." *Id.* at 299. The court held that, absent vicarious liability, "[w]here a hospital's alleged misconduct involves an omission to act, the hospital will not be held responsible unless it had reason to know that it should have acted within the duty it concededly had."[4] *Id.* It is based on this reasoning that the Mathiases' argument fails. Neither the nurses nor the hospital had a legal duty beyond that of ordinary care.

In *Kelley v. Kitahama*, 675 So. 2d 1181 (La. Ct. App. 1996), another case which is instructive, the plaintiff argued that once the hospital "undertook to verify, prior to surgery that informed consent existed," it breached its duty by allowing the surgery to proceed. *See id.* at 1182. This premise was rejected by the court in upholding summary judgment. It held:

> While we agree with Kelley's argument that there are facts at issue in the case as to whether the surgeon verbally provided her with the required information regarding her surgery to which she consented, we do not find that those factual issues are sufficient to defeat the [hospital's] motion for summary judgment. Those facts are not material to the question before us of whether [the hospital] had a duty to insure informed consent before the surgery. Taking the facts in the light most favorable to Kel-

[4] No argument is made by the Mathiases that Witt was not an independent physician hired by them or that the hospital is vicariously liable for Witt's action.

ley, and assuming that she was not adequately informed prior to her consent to the surgery, we still find no liability in [the hospital] for the alleged failure to adequately inform her.

*Id.* at 1183. The Wisconsin statute, § 448.30, STATS., specifies only that a *physician* obtain informed consent. The legislature could have enumerated other responsible entities had it chosen to do so. It did not. Furthermore, under the plain language of the statute, buttressed by Wisconsin case law and the reasoning of other courts, we conclude that under the facts of this case summary judgment in favor of St. Catherine's was appropriate.

The Mathiases, however, contend that the nurses had a duty to act under a theory of foreseeability. They argue that "[w]hen one assumes a duty towards another person, one becomes responsible as a participant if the duty is not carried out with reasonable care and caution." According to the Mathiases, "[t]he duty arises when Nurse Perri realizes that the consent form for sterilization is the only form that is not signed, which is a red flag to her, and should have been to any healthcare provider in a modern hospital context."

An act or the omission of an act may form the foundation of a cause of action only when it appears that a duty was owing. *See Palmer v. Henry Disston & Sons, Inc.,* 261 Wis. 368, 373, 52 N.W.2d 919, 921 (1952). At issue here is a determination of what is encompassed by the nurse's duty of ordinary care in this situation. " '[W]ithin the framework of a negligence case the particular conduct of a defendant is not examined in terms of whether or not there is a duty to do a specific act, but rather whether the conduct satisfied the duty placed upon individuals to exercise that degree of care as would be exercised by a reasonable

person under the circumstances.' " *Beacon Bowl, Inc. v. Wisconsin Elec. Power Co.,* 176 Wis. 2d 740, 770, 501 N.W.2d 788, 800 (1993) (quoted source omitted). Therefore, having concluded that St. Catherine's did not have a legal duty to ensure that Witt had obtained informed consent from the patient, the issue presented is whether, under the circumstances of this case, the actions of the nurses conformed to the standard of ordinary care.

The duty to explain the procedure to Amy and to obtain her informed consent lay with Witt. The nurses in the operating room checked Amy's medical chart to ascertain whether there were appropriate signed consent forms. Snyder informed Witt that a written consent form for the tubal ligation was not in Amy's chart. According to Snyder's deposition, Witt acknowledged having heard her comment. Although Amy's chart did not contain the signed form, that fact alone would not lead a reasonable person to conclude that Witt was performing a nonconsensual procedure. Based on Witt's response and the information they had available to them, the nurses had no reason to conclude that the absence of the form was anything more than a clerical error. Based on the reasoning of the *Dumer* case, we conclude that "[t]he hospital employees, under the circumstances alleged here, exercised ordinary care and thus performed the duty owed to the patient." *Dumer,* 69 Wis. 2d at 770, 233 N.W.2d at 374. Snyder informed Witt that the chart did not contain a signed consent form; in this instance, neither Snyder nor Perri had any duty to take further action.

Thus, under the facts of the instant case, the nurses fulfilled their duty of ordinary care to Amy. The Mathiases' invitation to extend the duty to a hospital to

ensure that a patient has given informed consent to a procedure performed by an independent physician is rejected. The grant of summary judgment to St. Catherine's is appropriate and is affirmed.

We now turn to the second issue on appeal—the trial court's denial of the Mathiases' motion for reconsideration. They argue that the trial court should have reopened the summary judgment "because the judgment was void, [and because of] newly discovered evidence, and other reasons which would justify the . . . reinstating of St. Catherine's Hospital, Inc. as a party defendant pursuant to section 807.07(1)(B)(D)(H) Wis. Stats."[5] They rely on several theories of why relief should have been granted. We will address each in turn.

■

The Mathiases first rely on § 802.08(4), STATS., to support their contention that the trial court had the authority to delay ruling on the summary judgment motion in order to consider further depositions which had not been taken at the time of the summary judgment hearing. That statute provides:

> WHEN AFFIDAVITS UNAVAILABLE. Should it appear from the affidavits of a party opposing the motion *that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition,* the court may refuse the motion for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery

---

[5] The statutory section referred to by the plaintiffs is entitled "Irregularities and lack of jurisdiction over the parties waived on appeal; jurisdiction exercised; transfer to proper court." Section 807.07, STATS. We surmise that counsel intended to refer to § 806.07, STATS., which provides for "Relief from judgment or order."

to be had or may make such other order as just.
[Emphasis added.]

As is clear from the plain language of the statute, the exercise of this authority is discretionary with the trial court. At the summary judgment hearing, counsel for the Mathiases stated, "I think [the additional depositions] will confirm exactly what I'm saying, that the hospital knew and that the operation proceeded." In addition, an affidavit submitted by the plaintiffs' counsel failed to suggest that he would be relying on the upcoming depositions as anything more than further support for the arguments that had already been made to the court. The trial court had already reviewed numerous depositions which purported to show "that the hospital knew and the operation proceeded." We conclude that there was no error in the trial court's denial.

The Mathiases next claim that the information learned at the April 25, 1996 depositions of Snyder and Yurchak was so "shocking" that reconsideration is warranted under § 805.15(3), STATS. They base this contention on the revelation of Yurchak's signing of Perri's name to the consent form and Snyder's description of her job in the operating room as that of a "patient advocate." Both of these pieces of evidence, they claim, qualify as newly discovered evidence under the statute. Section 805.15(3) provides:

> NEWLY-DISCOVERED EVIDENCE. A new trial shall be ordered on the grounds of newly-discovered evidence if the court finds that:
> (a) The evidence has come to the moving party's notice after trial; and

(b) The moving party's failure to discover the evidence earlier did not arise from lack of diligence in seeking to discover it; and

(c) The evidence is material and not cumulative; and

(d) The new evidence would probably change the result.

■

The Mathiases' claim fails to satisfy the four-pronged test. First, at the time the trial court ruled on the summary judgment motion, it was already aware that there were allegations regarding the hospital's obtaining a signed consent form from Amy three days after the surgery.[6] This issue was argued extensively in the plaintiffs' affidavits in opposition to the summary judgment motion. Furthermore, evidence of what occurred relating to a consent form after the tubal ligation was performed is immaterial to the legal issue of St. Catherine's duty to Amy. Therefore, we concur with the trial court that any evidence as to Yurchak's actions was merely cumulative. *See* § 805.15(3), STATS.

■

The other piece of "new" information which "flabbergasted" the plaintiffs' counsel was Snyder's characterization of her role as an "advocate" for the patient. The complete transcript of this "revelation" is as follows:

---

[6] The Mathiases also claim that the hospital evinced "consciousness of guilt" when it tampered with the records after the surgery. However, as the trial court determined, the hospital's actions after the tubal ligation was performed did not cause any damage to Amy and thus are immaterial to the issues before the court on the summary judgment.

[PLAINTIFFS' COUNSEL]:   What were the functions of a circulating nurse in February of 1993?

[SNYDER]:   We're the patient's advocate. We're to make sure that everything within the room that goes on is documented, that everything that goes on in the room meets standards of care. We're kind of like in charge of that patient and things that go on. I mean, we have people that help us with it, of course. The job description is about six pages long, but technically we're just — we're there to get slides, bring them in, make sure that a sterile field is maintained, call it when it's not, correct problems that arise, that kind of stuff.

In bringing the motion for reconsideration, the plaintiffs' counsel sought to attach legal significance to the term "advocate" as used by Snyder. The trial court found, and we concur, that this single reference by Snyder in which she describes her role in the operating room as that of a "patient advocate" does not satisfy the four-pronged test for newly discovered evidence. The only "new" information is Snyder's choice of the word "advocate" in her deposition. This did not alter her actions in the operating room, which were already before the trial court, nor did it change her legal duty to Amy. In sum, this information was merely cumulative of what was already before the trial court.[7]

Furthermore, and most importantly, the trial court stated in its denial of the motion for reconsideration:

---

[7] It is not our intent to suggest that a hospital may never have a duty to a patient regarding informed consent issues. A hospital's duty in that regard depends upon the facts and circumstances in each case.

The Court does not believe, however, that even with their depositions it would change the result of the Court's decision in regard to summary judgment. The Court does not believe with regard to the argument that has been made that St. Catherine's did have a duty as would be necessary in order to keep them in the case, and the Court is going to deny the motion for reconsideration in this case.

The trial court plainly stated that none of the new evidence would change its decision on the grant of summary judgment to St. Catherine's. A determination of whether proffered evidence satisfies the statutory standard is left to the discretion of the trial court. *See* § 805.15(3), STATS.; *see also Teasdale v. Teasdale,* 264 Wis. 1, 7, 58 N.W.2d 404, 406 (1953) ("The granting of a new trial on the ground of newly discovered evidence rests within the sound discretion of the trial court and its determination will not be set aside unless it is shown to be a clear abuse of such discretion."). The trial court's determination that the proffered evidence did not meet the statutory standards of § 805.15(3) was a proper exercise of discretion.[8]

The Mathiases also claim that the judgment should be reopened pursuant to § 806.07(1), STATS.,

---

[8] The plaintiffs' counsel also argues that he was diligent because he filed the motion for reconsideration immediately after the deposition which revealed the "new" evidence. Counsel misconstrues the statute's requirement that "[t]he moving party's failure to discover the evidence earlier *did not arise from a lack of diligence in seeking to discover it." See* § 805.15(3)(b), STATS. (emphasis added). Nurse Perri testified as early as September 20, 1995, that Yurchak had signed her name to the consent form; as to the issue of Snyder being a "patient advocate," Snyder's presence in the operating room was known from the outset.

which permits that "[o]n motion and upon such terms as are just, the court may relieve a party or legal representative from a judgment, order or stipulation." While conceding that the above is an "exercise of sound discretion on the part of the Trial Court," the Mathiases argue that this section should be applied in this instance "to prevent an unjust and unfair result." They then argue that there is a fact issue "concerning whether St. Catherine's knew or should have known that a nonconsensual sterilization may take place."

Section 806.07(1), STATS., gives a court discretion to reopen a judgment for any justified reason. However, as should be clear from our analysis above, the trial court exercised its discretion when it ruled on the impact of the proffered evidence and concluded that the evidence would not change the result. Bringing the same argument under a different statutory section ignores the trial court's prior careful consideration of this claim.

The Mathiases also argue that the judgment is void because it did not specify the place of residence of each party to the action as required by § 806.01(1)(b), STATS. They then claim that the judgment "should have been vacated; the evidence considered; summary judgment vacated; and the case proceeded to trial on the merits with both St. Catherine's and Dr. Witt as party defendants." In reviewing the record, we note that at the hearing on the motion for reconsideration, the Mathiases offered this same flaw as supporting their position that the trial court could, for any number of reasons, reopen the judgment. At that hearing counsel for the Mathiases stated, "In this case 806.01(1)(b) indicates the form of the judgment is not a proper form

when it doesn't have the name and address of the parties, so the Court could reopen the judgment." Since we conclude that the trial court has considered the substantive arguments for reconsideration, and the Mathiases have not claimed any prejudice due to the failure of the judgment to recite their address, we decline to address this argument further. *See generally The Northwestern Mut. Life Ins. Co. v. The Germania Fire Ins. Co.,* 40 Wis. 446, 451 (1876) ("The omission of the word *Mutual* [from a clause in an insurance policy] is merely a defective statement (not a wrong one) of the legal name and style of the plaintiff. It . . . cannot possibly mislead or prejudice any one."). *See also* § 806.10(1)(a), STATS. ("If the judgment or judgment and lien docket fails to give the place of residence of the judgment debtor . . . the validity of the judgment is not affected thereby . . . .").

Finally, St. Catherine's cross-appeals from the trial court's denial of taxable costs, attorney's fees and disbursements. We reverse the trial court's summary denial of costs and remand this issue for consideration pursuant to § 814.03, STATS.

*By the Court.*—Judgment affirmed in part, reversed in part and cause remanded; order affirmed.