738 So.2d 362 (1999)
CEDARS MEDICAL CENTER, INC., Jose R. Gomez, and Jose R. Gomez, M.D., P.A., Appellants,
v.
Maria RAVELO, Appellee.
Nos. 97-3197, 97-3071.
District Court of Appeal of Florida, Third District.
June 16, 1999.
Rehearing Denied September 8, 1999.
*364 Greenberg Traurig Hoffman Lipoff Rosen & Quentel and Arthur J. England, Jr. and Brenda Kay Supple, Miami; Adams & Adams; Joseph R. Gomez, Miami, for appellants.
Roberto Villasante; St. Louis, Guerra & Auslander, and Charles Auslander, for appellee.
Before GERSTEN, GODERICH and SORONDO, JJ.
SORONDO, J.
Cedars Medical Center, Inc. and Dr. Jose R. Gomez and Jose R. Gomez, M.D., P.A. appeal to this court the final judgment for Maria Ravelo. Ravelo cross-appeals the final judgment.
Ravelo, a woman in her late 20's, sued Cedars and Dr. Gomez, alleging medical negligence surrounding exploratory surgery which included the removal of an abdominal mass and certain affected organs. Ravelo first saw Dr. Gomez in October of 1986, to obtain a second opinion about a procedure she had undergone at a clinic and about her subsequent failure to have a menstrual cycle. Dr. Gomez provided the same diagnosis as her first doctor, that Ravelo suffered from a form of scarring of the uterus called Asherman's Syndrome. Dr. Gomez recommended and administered an intra-uterine device (IUD) for therapeutic purposes.
Ravelo next visited Dr. Gomez in August of 1988, when he referred her to a fertility expert, Dr. Bernard Cantor, who confirmed she had a severe case of Asherman's Syndrome. Ravelo saw Dr. Gomez again in July of 1989, reporting severe pelvic pain. He diagnosed her problem as stemming from masses or lumps on both sides of her abdomen and ordered an ultrasound exam. The ultrasound, performed by another doctor, confirmed the presence of a mass on her right ovary. Dr. Gomez then recommended surgery. Dr. Gomez and Ravelo testified to conflicting versions of what Dr. Gomez said. Ravelo understood that she would be undergoing exploratory surgery to determine whether a cyst on her right ovary had to be removed and that the worst possible risk of the surgery was the removal of her right ovary. Dr. Gomez testified that he informed Ravelo that there existed the possibility for a hysterectomy.
Ravelo was subsequently admitted to Cedars in August 1989, where Dr. Gomez was an independent contractor with surgical privileges. At the time of admission, she signed a "consent and authorization" form which recited that Dr. Gomez was not an employee of Cedars. On the night Ravelo was admitted to Cedars, before going to Ravelo's room to prepare her for the next morning's surgery, a nurse retrieved from the hospital dispensary certain medications that had been ordered for Ravelo, including a sleeping pill. Once at Ravelo's room, the nurse prepped her, administered some of the medication that had been ordered, obtained Ravelo's signature on a form that authorized surgery and verified that she had given her physician consent for surgery.
On the morning of surgery, this same form was signed by Dr. Gomez who testified that he did not rely on Cedars to convey information necessary for Ravelo's informed consent. During the operation, Dr. Gomez performed the procedures listed *365 on the various hospital forms, but in the course of the exploratory surgery discovered an unanticipated large amount of blood and adhesive tissue that required draining and separating. He immediately paged Dr. Elda Ferrer-Guerra for an intra-operative consultation, and the two agreed that it was necessary to remove both ovaries, the fallopian tubes and uterus. Upon subsequent analysis of the tissue removed from Ravelo, a pathologist determined that it showed severe and extensive endometriosis (the backwards flow of menstrual tissue out of the uterus, with growth that invades the outer lining of the uterus and other abdominal organs). Experts at trial testified that Ravelo's endometriosis had affected both ovaries, both fallopian tubes, and the surface of the uterus.
Ravelo sued Cedars and Dr. Gomez, alleging that the organs should not have been removed. The amended complaint filed January 23, 1992 alleged one count of negligence against Dr. Gomez and that Dr. Gomez failed to obtain from Ravelo informed consent to all the procedures performed while in surgery. Regarding Cedars, Ravelo alleged 1) that Dr. Gomez was acting as an agent of Cedars when he operated on her, 2) that Cedars was negligent in discharging its risk management obligations by failing to advise her about Dr. Gomez's alleged propensity for unnecessary medical procedures, and 3) that Cedars breached a duty to her by encouraging its physicians to perform procedures not consented to or about which patients were not fully informed.
Dr. Gomez denied all allegations of negligence and asserted that Ravelo had received the proper treatment and had given full consent to the procedures. Cedars denied each of Ravelo's claims, asserting that Dr. Gomez was not an employee of the hospital and that it had absolute immunity both as to any actions taken by Dr. Gomez and as to any failure on his part to obtain informed consent from Ravelo prior to her operation.
A jury trial followed and at the close of Ravelo's case, Cedars moved for a directed verdict on her three theories of 1) apparent agency with Dr. Gomez, 2) negligent retention or credentialing of Dr. Gomez, and 3) failure to obtain informed consent. The trial court allowed the agency and informed consent theories to proceed, but granted a directed verdict on negligent retention and credentialing. Cedars presented its case, then renewed its motion for a directed verdict on Ravelo's remaining claims. The trial court inquired of Ravelo's counsel on what theory of apparent agency he was traveling other than failure to obtain informed consent and gave him some time to give an answer.
During the jury charge conference, Ravelo's counsel proposed instructions on Cedars' liability for the two remaining issues but stated that he was unable to provide any additional argument for Cedars' liability for the acts of Dr. Gomez. Ravelo's proposed instruction for Cedars' liability based on agency was denied. Ravelo's counsel then requested from the court a ruling on the theory of Cedars' liability based on apparent agency. This theory and corresponding instruction were also rejected by the trial court.
Ravelo's counsel then proposed jury instruction # 12, "Voluntary Undertaking of Duty" and argued in relation to the consent form that if Cedars undertook the duty, it was under an obligation to do it with reasonable care. Cedars' counsel objected, but the court approved the proposed instruction. The next day at the continuation of the jury instruction conference, Cedars' counsel informed the court that the Florida Medical Consent Law did not extend the duty to obtain informed consent to a hospital or to a nurse. However, the court elected to instruct the jury that Cedars could be found liable on the theory of informed consent or assumption of a duty.
After deliberations, the jury returned verdicts against Dr. Gomez and Cedars jointly for $2 million based on negligence *366 in obtaining her informed consent to remove all of her reproductive organs. The jury found that Dr. Gomez did not fall below the standard of care in his treatment of Ravelo. The court entered judgment on the verdicts. Cedars and Dr. Gomez moved for judgment notwithstanding the verdict and for a new trial, which were denied. Cedars and Dr. Gomez appealed, and this court consolidated the two appeals. Ravelo filed a cross-appeal. We proceed to analyze each party's appeal individually.

DR. GOMEZ
Dr. Gomez argues that Ravelo's counsel's statements during closing argument constituted fundamental error and that reversal of the final judgment and a new trial are in order. We disagree. We first note that no objection was made to the comments complained of on appeal. The law is clear that a contemporaneous objection to an improper comment in summation is necessary in order to preserve the claim for appellate review. See Street v. State, 636 So.2d 1297 (Fla.1994); Eichelkraut v. Kash N' Karry Food Stores Inc., 644 So.2d 90 (Fla. 2d DCA 1994); Wasden v. Seaboard Coast Line R.R. Co., 474 So.2d 825 (Fla. 2d DCA 1985). The exception to this general rule is where the comment is so egregious that it constitutes fundamental error. See Sears Roebuck & Co. v. Jackson, 433 So.2d 1319 (Fla. 3d DCA 1983). Fundamental error in closing argument occurs when the "prejudicial conduct in its collective import is so extensive that its influence pervades the trial, gravely impairing a calm and dispassionate consideration of the evidence and the merits by the jury." Silva v. Nightingale, 619 So.2d 4, 5 (Fla. 5th DCA 1993)(quoting Tyus v. Apalachicola Northern R.R. Co., 130 So.2d 580, 587 (Fla.1961)). Having reviewed the objectionable comments in context, as well as the evidence presented at trial, we cannot conclude that the comments at issue constituted fundamental error. Accordingly, the final judgment against Dr. Gomez is affirmed.

CEDARS MEDICAL CENTER
Cedars argues that as a matter of law, it had no duty to obtain Ravelo's informed consent to surgical procedures performed by Dr. Gomez. We agree. The record reflects that Dr. Gomez was not an employee of Cedars; he was an independent contractor who had staff privileges at Cedars. It is well-established that a hospital is not liable for the acts of a physician who is an independent contractor. See Public Health Trust of Dade County v. Valcin, 507 So.2d 596, 601 (Fla.1987); Snead v. Le Jeune Road Hosp., Inc., 196 So.2d 179 (Fla. 3d DCA 1967).[1]
Moreover, Florida law confines liability for a failure to obtain informed consent to medical practitioners. Florida's Medical Consent Law, first enacted in 1975, lists the persons against whom there can be recovery for the failure to secure informed consent for a medical procedure. The current version of the law is codified in section 766.103, Florida Statutes (1997). Hospitals have never been and are not included in this listing. The reason for this legislative restriction in section 766.103 is that only a treating physician has the training, experience, skill and background facts regarding the patient's condition to obtain from the patient an "informed" decision on whether any particular medical procedure should be performed. This rationale has been expressed in some out-of-state decisions that have the same statutory or common law limitation on the liability of hospitals as Florida. For example, in Kelly v. Methodist Hosp., 444 Pa.Super. 427, 664 A.2d 148 *367 (1995), the Superior Court of Pennsylvania stated:
It is the surgeon and not the hospital who has the education, training and experience necessary to advise each patient of risks associated with the proposed surgery. Likewise, by virtue of his relationship with the patient, the physician is in the best position to know the patient's medical history and to evaluate and explain the risks of a particular operation in light of the particular medical history.
Kelly, 664 A.2d at 151. See also Petriello v. Kalman, 215 Conn. 377, 576 A.2d 474 (1990); Pauscher v. Iowa Methodist Med. Ctr., 408 N.W.2d 355, 362 (Iowa 1987); Kelley v. Kitahama, 675 So.2d 1181, 1182 (La.Ct.App.), writ denied, 679 So.2d 1352 (La.1996); Giese v. Stice, 252 Neb. 913, 567 N.W.2d 156, 163 (1997); Boney v. Mother Frances Hosp., 880 S.W.2d 140 (Tex.App.1994); Ritter v. Delaney, 790 S.W.2d 29 (Tex.App.1990); Mathias v. St. Catherine's Hosp., Inc., 212 Wis.2d 540, 569 N.W.2d 330, 333 (App.1997).
In Valcin v. Pub. Health Trust of Dade County, 473 So.2d 1297 (Fla. 3d DCA 1984), approved in part and quashed in part on other grounds, 507 So.2d 596 (Fla. 1987), applying Florida's Medical Consent Law, this Court held that it is the duty of the physician, not the hospital, to obtain a patient's informed consent. Valcin, 473 So.2d at 1307. The court defined "informed" consent as being where the person knows the dangers and degrees of danger of a certain procedure to be performed, citing Bowers v. Talmage, 159 So.2d 888 (Fla. 3d DCA 1963). Valcin, 473 So.2d at 1302. The court then went on to describe at length the extent of the information which a doctor is required to give to a patient. Id. This Court's discussion and application of the Medical Consent Law in Valcin make clear Florida's policy to immunize hospitals from liability for obtaining a patient's consent to a medical procedure performed at its facility by a non-employee physician.
Additionally, as noted by Cedars, Florida's Medical Consent Law is reflected in Florida Standard Jury Instruction (Civil) 4.2b. By its terms, it limits an instruction on informed consent to physicians or "other health care providers specified in § 768.46(3)."[2] A review of the record indicates that this instruction was given to the jury in this case. However, before it was read to the jury, the trial court, over Cedars' objection, added Cedars' name as another potentially liable health care provider. We agree with Cedars that this addition improperly expanded the scope of the statute. Consequently, the trial court erroneously subjected Cedars to liability for the duty of obtaining Ravelo's informed consent, despite the fact that according to Florida's Medical Consent Law, that responsibility can only be assigned here to Dr. Gomez.
Next, Cedars argues that it could not have been liable for assuming a duty to obtain informed consent from Ravelo because the issue of assumption of duty was neither pled nor tried by consent. Ravelo answers that although the word "assumption" does not appear in her amended complaint, a voluntary assumption of duty theory of liability was included in the complaint and thus her amended complaint was not deficient. Further, she responds that Cedars did not object in the trial court on the ground that assumption of duty to obtain informed consent had not been pled.
We find that a voluntary assumption of duty theory of liability against Cedars should not have been submitted to the jury because it was not pled by Ravelo. The pleading of a legal theory is indispensable to a finding of liability on the basis of that theory. See Hart Properties, Inc. v. Slack, 159 So.2d 236 (Fla.1963); Cortina v. Cortina, 98 So.2d 334 (Fla.1957). In this *368 case, Ravelo's amended complaint alleged that Dr. Gomez did not obtain her informed consent. There was nothing else in the pleading alleging that Cedars did not obtain her informed consent.
Further, we find that a voluntary assumption of duty theory of liability against Cedars should not have been submitted to the jury because it was not tried by the parties' consent. First, we note that the record reflects that Cedars objected at the jury instruction conference to Ravelo's contention that Cedars assumed the duty of getting her informed consent and objected to Ravelo's proposed instruction entitled "Voluntary Undertaking of Duty." Furthermore, there can be no trial of an unpled theory by implied consent when the evidence introduced is relevant to other issues properly being tried. See Raimi v. Furlong, 702 So.2d 1273, 1285 (Fla. 3d DCA 1997), review denied, 717 So.2d 531 (Fla.1998). In this case, the same evidence that might have supported Ravelo's negligent selection or retention theory against Cedars, on which the trial court granted a directed verdict for Cedars, would also have supported the foreseeability element of an assumption of duty theory of liability against Cedars. Thus, in accordance with Raimi, the unpled theory of assumption of duty liability against Cedars could not have been tried by implied consent because the evidence sought to be introduced in relation to that claim was also evidence that was sought to be introduced on Ravelo's negligent retention or selection theory of liability against Cedars, which had been pled and was properly before the trial court. Accordingly, we reverse the judgment against Cedars and remand with instructions to enter judgment in Cedars' favor.

RAVELO'S CROSS-APPEAL
Ravelo cross-appeals and argues that the trial court erred in precluding a claim against Cedars based on the doctrine of corporate negligence. She proffered evidence that Cedars knew about but did not care or investigate that Dr. Gomez's history included a suspension of his staff privileges in a West Virginia hospital for performing too many hysterectomies. Ravelo sought to prove through the opinion testimony of her expert witness that this responsibility running from Cedars to Ravelo was breached by Cedars' corporate negligence. A thorough review of all the facts in the record supports our conclusion that the trial court did not abuse its discretion in denying Ravelo the opportunity to present this evidence.
First, regarding the trial court's exclusion of proffered documents concerning West Virginia materials as they relate to the credentialing of Dr. Gomez, we find that the trial court did not abuse its discretion in excluding these materials as irrelevant and stale evidence. The documents only show that Dr. Gomez had a disagreement with staff members at a hospital in West Virginia in 1976, as a result of which he suffered a temporary suspension of his surgical privileges. Dr. Gomez then filed a lawsuit against the hospital which was dismissed for failure to exhaust administrative remedies. His suspension was rescinded after the dispute was resolved. Ravelo acknowledges that Dr. Gomez's privileges were fully reinstated. The allegations in the unsworn pleadings filed in the lawsuit are not substantive evidence of anything. See generally Beck's Transfer, Inc. v. Peairs, 532 So.2d 1136, 1137 (Fla. 4th DCA 1988). Ravelo did not proffer any evidence to substantiate the allegations in the West Virginia lawsuit. Thus, we find that the exclusion of these materials was not erroneous.
Second, we find that the trial court's exclusion of Dr. Wayne Rogers' testimony (Cedars' former chief of obstetrics), concerning his knowledge of the West Virginia matter was not erroneous. Ravelo sought to introduce deposition testimony of Dr. Rogers to show that he knew of Dr. Gomez's prior suspension but did not investigate it. Dr. Rogers testified *369 that he vaguely remembered the West Virginia suspension of Dr. Gomez's staff privileges and further testified that the suspension could not have been important to the credentialing of Dr. Gomez because it had not served as an impediment to placing Dr. Gomez on Cedars' staff. Thus, the exclusion of this testimony was not erroneous where it failed to support Ravelo's allegation of negligent credentialing.
Finally, Ravelo's third allegation is that the trial court denied her the opportunity to elicit an opinion from one of her experts regarding the retention of Dr. Gomez on Cedars' staff in 1989. A review of the transcript indicates that Ravelo did not offer proof to support her claim that Dr. Gomez had ever performed excessive surgery or had acted negligently in any other way in his medical practice. Thus, without a predicate for the opinion which Ravelo sought to elicit, the trial court correctly ruled that the expert's opinion could not be put before the jury. See Iden v. Kasden, 609 So.2d 54, 57 (Fla. 3d DCA 1992), citing Arkin Constr. Co. v. Simpkins, 99 So.2d 557 (Fla.1957) ("expert witness' opinion based on facts or inferences not supported by evidence has no evidentiary value; the opinion cannot constitute proof of the existence of facts necessary to support the opinion"). As such, the trial court did not abuse its discretion on any of these three evidentiary rulings, and we affirm the trial court's decision on Ravelo's cross-appeal.
We affirm the final judgment entered against Dr. Gomez. Likewise, we affirm the lower court as concerns Ravelo's cross-appeal. We reverse the final judgment entered against Cedars and remand with instructions to enter judgment in its behalf.
Affirmed in part, reversed in part and remanded with instructions.
NOTES
[1] The two exceptions to the rule that a hospital is not liable for the negligence of an independent contractor physician, 1) the negligent selection and retention of a physician, see Insinga v. LaBella, 543 So.2d 209, 214 (Fla. 1989), and 2) negligence by emergency room physicians, see Irving v. Doctors Hosp. of Lake Worth, Inc., 415 So.2d 55 (Fla. 4th DCA 1982), are inapplicable here.
[2] The former Section 768.46(3) was transferred from its original statutory placement in Chapter 768, Florida Statutes (1975), without amendment, to the present Section 766.103.