832 P.2d 797

**Frank JOHNSON, as Personal Representative of the Estate of Marjorie Johnson, Deceased, Plaintiff–Appellant,**

v.

**SEARS, ROEBUCK & COMPANY; Bechtel Constructors Corporation; Cornel Dumitriu, M.D.; Blood Services, Inc., d/b/a Blood Services of New Mexico; Albuquerque Plasma Corporation; United Blood Services; and Yale Blood Plasma, Defendants,**

and

**St. Joseph Hospital, Inc., Defendant–Appellee.**

No. 11836.

Court of Appeals of New Mexico.

April 1, 1992.

Certiorari Denied May 21, 1992.

David H. Pearlman, David H. Pearlman, P.A., Albuquerque, for plaintiff-appellant.

D. James Sorenson, Sorenson & Schutte, P.C., Albuquerque, for defendant-appellee St. Joseph Hosp., Inc.

OPINION

MINZNER, Judge.

Plaintiff, as personal representative of the estate of Marjorie Johnson (Johnson), appeals the district court's dismissal of his claims against St. Joseph Hospital (the hospital), based on the hospital's failure to obtain Johnson's informed consent prior to giving her a blood transfusion. Because we believe that the district court correctly determined that plaintiff's complaint failed to state a claim for which relief can be granted against the hospital, we affirm.

Johnson had a history of urinary tract infections. On January 8, 1985, after suffering from severe symptoms, Johnson underwent bladder suspension surgery and a hysterectomy at the hospital. The day after the surgery, Dr. Dumitriu, who had performed the bladder suspension surgery, ordered that Johnson receive one unit of packed red cells (whole blood with the plasma removed), because he was concerned that she was developing septic shock. The blood was transfused by nurses at the hospital. Dr. Dumitriu failed to obtain informed consent from Johnson, and the nurses neither obtained her consent themselves nor determined whether or not Dr. Dumitriu had done so.

A few months after surgery, Johnson developed classic hepatitis symptoms, and test results indicated that she had developed non-A, non-B hepatitis, which was probably transfusion-induced. During the next year, Johnson developed hepatic hypertension and esophageal varices, which were contributing causes of her death.

Plaintiff initially sued Sears and its construction company for personal injuries Johnson suffered in a fall at the Coronado Sears store on September 26, 1984. Later, he amended his complaint to add claims against Dr. Dumitriu, the hospital, and various blood suppliers for malpractice and negligence arising from the blood transfusion following the January 1985 surgery. Sears and its construction company were dismissed from the case. On the morning of trial, the court dismissed plaintiff's complaint against the hospital for failure to state a claim.

■ In his docketing statement, plaintiff characterized his claims against the hospital as including both negligence and battery claims. However, plaintiff's brief only addresses the issue of negligence. Issues raised in the docketing statement but not argued in the brief-in-chief are considered abandoned. *State v. Vogenthaler*, 89 N.M. 150, 152, 548 P.2d 112, 114 (Ct.App.1976).

Our task, in reviewing the dismissal of plaintiff's complaint for failure to state a claim upon which relief may be granted, *see* SCRA 1986, 1–012(B)(6), is to " 'accept as true all facts well pleaded and question only whether the plaintiff might prevail under any state of facts provable under the claim.' " *California First Bank v. State*, 111 N.M. 64, 66, 801 P.2d 646, 648 (1990) (quoting *Gomez v. Board of Educ.*, 85 N.M. 708, 710, 516 P.2d 679, 681 (1973)). The record indicates that by the time of the hearing, the question of the hospital's liability had narrowed to whether it owed Johnson a duty to obtain informed consent or to determine that Dr. Dumitriu had done so.

■ In order for plaintiff to prevail at trial against the hospital on the facts alleged in his amended complaint, he must first show that the hospital owed Johnson a duty. Negligence is predicated on the existence of a duty owed to a particular plaintiff, and the existence of a duty is a question of law for the court to decide. *Schear v. Board of County Comm'rs*, 101 N.M. 671, 672, 687 P.2d 728, 729 (1984). The analysis of duty focuses on foreseeability, that is, whether a particular plaintiff was within the zone of danger created by the defendant's actions. *Calkins v. Cox Estates*, 110 N.M. 59, 61, 792 P.2d 36, 38 (1990).

■ It is undisputed that the hospital employed the nurses who performed the transfusion. Plaintiff has not alleged that the hospital employed Dr. Dumitriu. Based on facts similar to those pled in this case, this court has determined previously that the hospital had no duty to obtain Johnson's informed consent before transfusing her. *See Cooper v. Curry*, 92 N.M. 417, 420, 589 P.2d 201, 204 (Ct.App.1978). In *Cooper*, we held that a hospital had no duty to obtain a patient's informed consent to a surgical procedure ordered by a non-employee physician. We reasoned that imposing such a duty would interfere unnecessarily with the physician-patient relationship.

Plaintiff attempts to distinguish *Cooper* by arguing that in this case the nurses actually performed the transfusion and, unlike the admitting clerk in *Cooper*, had the necessary knowledge and training to ex-

plain and discuss with Johnson the risks inherent in a transfusion. While it is true that the facts of this case are distinguishable, the distinction does not alter the underlying policy of *Cooper's* holding. Placing a duty of obtaining a patient's informed consent to procedures ordered by a physician but performed by hospital staff would unnecessarily interfere with the physician-patient relationship.

Although a hospital employee has the necessary skill and expertise to perform a procedure for which the employee has been trained, the employee does not necessarily have the requisite knowledge of a particular patient's medical history, diagnosis, or other circumstances which would enable the employee to fully disclose all pertinent information to the patient. *See* SCRA 1986, 13–1104B (Repl.1991) (the standard to determine whether a patient was reasonably informed before he or she gave consent is measured by what reasonably well-qualified doctors under similar circumstances would have disclosed to a similarly situated patient). Without such knowledge, an employee's explanation of the risks and benefits of a procedure could be incomplete and might emphasize the risks inherent in any procedure without adequately describing the benefits and the specific reasons for which the physician ordered the procedure. *See Parr v. Palmyra Park Hosp., Inc.,* 139 Ga.App. 457, 228 S.E.2d 596, 598 (1976). The physician is uniquely qualified through education and training, and as a result of his or her relationship to the patient, to determine the information that the particular patient should have in order to give an informed consent. *See Kershaw v. Reichert,* 445 N.W.2d 16, 17 (N.D.1989).

Plaintiff also argues that *Cooper's* holding should be limited or overruled because it no longer reflects current informed consent law. Moreover, plaintiff contends that the applicable standard of care, as shown by the policies of similar hospitals in similar circumstances, is for hospitals to ensure that informed consent has been obtained prior to performing any procedure on a patient.

■ Duty is a concept that constantly changes to mirror changes in social conditions. *Wilschinsky v. Medina,* 108 N.M. 511, 513, 775 P.2d 713, 715 (1989). However, in spite of the changing nature of medical care and the changing nature of a hospital's role in providing that care, *Cooper* continues to represent the majority rule, which is that, absent special circumstances not alleged to have existed in this case, hospitals have no duty to obtain informed consent for a procedure ordered by a non-employee physician and performed by hospital employees. *See Howell v. Spokane & Inland Empire Blood Bank,* 114 Wash.2d 42, 785 P.2d 815 (1990) (en banc) (Washington's informed consent statute did not create an independent duty requiring a hospital to intervene in the physician-patient relationship and obtain its own informed consent from a patient prior to transfusing, citing *Cooper* and cases from other jurisdictions); *see also Pauscher v. Iowa Methodist Medical Ctr.,* 408 N.W.2d 355 (Iowa 1987) (directed verdict properly granted for hospital because a hospital has no duty to inform patients of matters at the heart of the doctor-patient relationship); *Kershaw v. Reichert* (a hospital generally has no duty to obtain an informed consent from a patient; court affirmed the dismissal of suit against hospital for its failure to obtain informed consent).

■ In addition, *Cooper* appears to have decided that if a hospital has no duty to obtain informed consent, it has no duty to ensure that someone else has done so. 92 N.M. at 419, 589 P.2d at 203. That decision makes sense, because there would be little reason to impose a duty to ensure that someone else had obtained consent if there was no corresponding duty to advise the patient of relevant, relative risks and benefits or otherwise obtain an informed consent upon determining that he or she had not yet given one. In fact, one of the cases on which plaintiff relies appears to equate the two duties. *See Campbell v. Pitt County Memorial Hosp., Inc.,* 84 N.C.App. 314, 352 S.E.2d 902 (1987), *aff'd by an equally divided court,* 321 N.C. 260, 362 S.E.2d 273 (1987) (indicating that the hospi-

tal had a duty through its nurses to obtain the informed consent of a mother to a vaginal delivery of a breech baby or to ensure that someone else had done so).

Courts in other jurisdictions, in fact, support the position this court apparently adopted in *Cooper.* They have held that, under similar circumstances, a hospital has no duty to ensure that the physician obtained an informed consent. *See, e.g., Petriello v. Kalman,* 215 Conn. 377, 576 A.2d 474 (1990) (hospital had no duty to determine whether the patient had consented to a surgical procedure; physician alone had the responsibility to obtain informed consent); *Pauscher v. Iowa Methodist Medical Ctr.* (hospital has no duty to inform patient of risks involved with surgery or to adopt policies that allow physicians to practice in hospital only if they have obtained patient's consent); *Cross v. Trapp,* 170 W.Va. 459, 294 S.E.2d 446 (1982) (hospital owes no duty to obtain consent for surgery or ensure physician has obtained consent unless treating physician is hospital's agent); *cf. Pickle v. Curns,* 106 Ill.App.3d 734, 62 Ill.Dec. 79, 435 N.E.2d 877 (1982) (hospital has no duty to ensure staff physicians always perform duty of due care to each patient).

We recognize that in some cases hospitals have been held liable for a physician's negligence under a corporate negligence theory. *See, e.g., Cooper v. Curry,* 92 N.M. at 420, 589 P.2d at 204 (corporate negligence doctrine has been basis for imposing liability on hospitals for negligence of physicians, based on hospital's own failure to properly oversee the treatment of its patients); *Darling v. Charleston Community Memorial Hosp.,* 33 Ill.2d 326, 211 N.E.2d 253 (1965) (court found that the hospital owed its patient a duty to properly oversee the work of its staff and physicians), *cert. denied,* 383 U.S. 946, 86 S.Ct. 1204, 16 L.Ed.2d 209 (1966). However, we do not understand plaintiff's amended complaint to have alleged facts that would support liability under that theory. Most jurisdictions have not imposed such a duty on similar facts. *See generally Howell v. Spokane & Inland Empire Blood Bank,* 785 P.2d at 822 (doctrine of corporate negligence does not encompass a claim for lack of informed consent absent unusual circumstances); *but cf. Magana v. Elie,* 108 Ill.App.3d 1028, 64 Ill.Dec. 511, 439 N.E.2d 1319 (1982) (under the corporate negligence doctrine a hospital may have a duty to require physician who uses its facilities to advise a patient of risks associated with a procedure). Plaintiff's reliance on *Campbell* is misplaced. *Campbell* has no precedential value under North Carolina law. *See id.,* 362 S.E.2d at 276 (the decision "stands without precedential value"). In addition, we believe Judge Orr's dissent in *Campbell* is more persuasive under North Carolina law and is more in line with our own law. *Campbell v. Pitt County Memorial Hosp., Inc.,* 352 S.E.2d at 912–14. *Magana* appears to be inconsistent with New Mexico law because it appears that the court held the existence of the duty could not be established as a matter of law. 64 Ill.Dec. at 514, 439 N.E.2d at 1322. *See generally Schear v. Board of County Comm'rs,* 101 N.M. at 672, 687 P.2d at 729 (existence of duty is a question of law, not fact).

We conclude that *Cooper* continues to reflect the majority rule and better-reasoned position on the issue of whether a hospital has a duty to ensure that someone else has obtained an informed consent, as well as the issue of whether a hospital has a duty to obtain an informed consent. We are not persuaded on these facts that *Cooper* should be limited or overruled. We hold that *Cooper* controls the disposition of this case, and we conclude that under *Cooper* the district court properly granted the hospital's motion to dismiss the amended complaint. Therefore, we affirm the district court's order dismissing plaintiff's claim against the hospital with prejudice.

IT IS SO ORDERED.

APODACA and PICKARD, JJ., concur.