664 A.2d 148

**Lorraine KELLY and James Kelly, H/W, Appellants**

v.

**METHODIST HOSPITAL and Joseph DeMichele, M.D. and John Doe # 1–10.**

Superior Court of Pennsylvania.

Argued June 7, 1995.

Filed Aug. 28, 1995.

428

James H. Pickering, Jr., Philadelphia, for appellants.

J. Michael Doyle, Philadelphia, for Methodist Hospital, appellee.

Before McEWEN, TAMILIA and KELLY, JJ.

TAMILIA, Judge:

This appeal follows the March 30, 1994 Order granting the Application for a Determination of Finality pursuant to Pa. R.A.P. 341 filed by James and Lorraine Kelly (appellants). The application was filed after the trial court granted the preliminary objections of Methodist Hospital (appellee) to certain paragraphs in appellants' complaint.

On March 19, 1992, appellant-wife, Mrs. Kelly, underwent gallbladder surgery, performed by appellee-Dr. DeMichele, at appellee-Methodist Hospital. On August 30, 1993, appellants filed a medical malpractice action against appellees alleging various injuries to Mrs. Kelly's heptic, bile and biliary ducts. The complaint alleged the following with regard to Methodist Hospital:

39. Pursuant to rule 15 of its Rules and Regulations for the Department of Surgery, Methodist required that patients must provide written informed consent before any surgical procedure (except in an emergency). Methodist prepared and/or adopted a specific form for the written consent titled "Consent to Surgical Procedures & Operations & Blood Transfusions." Methodist did not establish, formulate, adopt or enforce any adequate rules, practices or policies to ensure that the physicians fully explain the potential risks involved in a particular operation and identify the possible complications.

40. Defendant Methodist was careless and negligent both generally and in the following respects:

.     .     .     . .     .

c. Failing to properly monitor and supervise the actions and conduct of physicians and patients concerning the process of obtaining the patient's informed consent for surgical procedures;

d. Failing to establish sufficient guidelines, policies, practices, or procedures to reasonably and properly set forth the nature and scope of the substantive information that should be disclosed by a physician to a patient at Methodist prior to the physician obtaining the informed consent of the patient for a surgical procedure;

e. Failing to provide adequate rules, procedures, guidelines or other information to implement Rule 15 of the Methodist Department of Surgery Rules and Regulations which requires that the patient be informed of "all the risks" of a surgical procedure.

(Appellants' Complaint at 11–12.)

On September 24, 1993, appellees responded to these paragraphs by filing preliminary objections in the nature of a demurrer asserting that a hospital owes no duty to a patient regarding informed consent. The trial court agreed and by Order dated October 29, 1993 struck paragraphs 39, 40(c), (d) and (e) from appellants' complaint. Thereafter, appellants' motion for reconsideration was denied and the trial court deemed its Order final pursuant to Pa.R.A.P. 341(c). This appeal followed.

█ In considering preliminary objections in the nature of a demurrer, we must examine the complaint to determine whether it sets forth a cause of action which, if proved, would entitle a party to the relief sought; if such is the case, the demurrer may not be sustained, but if the complaint fails to set forth a cause of action, preliminary objections in the nature of a demurrer are properly sustained. *Doe v. Dyer Goode*, 389 Pa.Super. 151, 566 A.2d 889 (1989), *alloc. denied,*

527 Pa. 587, 588 A.2d 509 (1990); *Rose v. Wissinger,* 294 Pa.Super. 265, 439 A.2d 1193 (1982).

■ On appeal, appellants argue strenuously and at great length that they are not attempting to impose upon a hospital the duty of obtaining informed consent from patients. Rather, they claim the stricken paragraphs set forth a cause of action for corporate negligence based on the hospital's failure to promulgate relevant "policies, practices or procedures" relating to informed consent. (Appellants' Brief at 19.)

## I. The Doctrine of Informed Consent

The appellate courts of this Commonwealth have historically interpreted the doctrine of informed consent as applying only to the surgeons who perform operations without first securing the informed consent of the patient. In determining whether the patient's consent to a surgical operation was "informed," one must consider whether the physician disclosed to the patient all of the facts, risks, and alternatives, which a reasonable person would deem significant in making a decision to undergo the recommended procedure. An operation performed without the patient's informed consent constitutes a battery upon the patient, thus making the physician or physicians liable for any injuries regardless of whether the surgery was negligently performed.

Under normal circumstances only the physician who performs the operation on the patient has the duty of obtaining the patient's informed consent. Therefore, Dr. Clough, who only performed the appellant's pre-surgery physical examination, and Nurse Lockerman, who is not a physician, were under *no duty* to obtain the appellant's informed consent to the operation.

*Shaw v. Kirschbaum,* 439 Pa.Super. 24, 653 A.2d 12 (1994) (citations omitted), *quoting Foflygen v. Zemel,* 420 Pa.Super. 18, 615 A.2d 1345 (1992), *alloc. denied,* 535 Pa. 619, 629 A.2d 1380 (1992).

Instantly, appellants sought to plead and prove that Methodist Hospital was negligent in failing to "ensure that physi-

cians fully explain the potential risks," (Appellants' Complaint, Paragraph 39), and in failing to "set forth the nature and scope of the substantive information that should be disclosed" (Appellants' Complaint, Paragraph 40(d)). Despite appellants' vigorous denials, these paragraphs clearly attempt to impose upon a hospital duties which are every bit as extensive as the duty to obtain informed consent. Thus, appellants are attempting to assert an informed consent cause of action based on negligence. Such a theory does not constitute a viable cause of action in Pennsylvania.

> As an intermediate appellate court, this Court is obligated to follow the precedent set down by our Supreme Court. In *Gray v. Grunnagle* [423 Pa. 144, 223 A.2d 663 (1966) ], and *Smith v. Yohe* [412 Pa. 94,. 194 A.2d 167 (1963) ], our Supreme Court held that the patient's consent is a prerequisite to a surgical operation and an operation without the patient's consent is a battery. Recently, the Supreme Court has re-affirmed this long-standing precedent in *Moure v. Raeuchle* [529 Pa. 394, 604 A.2d 1003 (1992) ]. Moreover, there have been numerous decisions of this Court, both panel and *en banc*, which have applied the rule set forth in *Gray v. Grunnagle, supra*, at 144, 223 A.2d 663, and *Smith v. Yohe, supra*, at 94, 194 A.2d 167 to informed consent cases. *Levenson v. Souser* [384 Pa.Super. 132, 557 A.2d 1081 (1989) ]; *Doe v. Dyer–Goode* [389 Pa.Super. 151, 566 A.2d 889 (1989) ]; *Sagala v. Tavares* [367 Pa.Super. 573, 533 A.2d 165 (1987) ]; *Sauro v. Shea*, 257 Pa.Super. 87, 390 A.2d 259 (1978); *Cooper v. Roberts*, 220 Pa.Super. 260, 286 A.2d 647 (1971). Thus, we are compelled to analyze informed consent cases under a battery theory until and unless our Supreme Court decides to recognize an informed consent cause of action grounded in negligence. *Levenson v. Souser, supra*, at 132, 557 A.2d 1081.

*Shaw, supra* at 31, 653 A.2d at 15, *quoting Foflygen, supra* at 34, 615 A.2d at 1353.

With this in mind, we distinguish the case cited by appellants as the basis of their "corporate negligence" claim, *Thompson v. Nason Hospital*, 527 Pa. 330, 591 A.2d 703 (1991). In *Thompson*, a case not involving informed consent,

our Supreme Court held a hospital owes the following duties to its patients:

    (a)  A duty to use reasonable care in the maintenance of safe and adequate facilities and equipment;

    (b)  A duty to select and retain only competent physicians;

    (c)  A duty to oversee all persons who practice medicine within its walls as to patient care; and

    (d)  A duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for the patients.

*Id.* at 339, 591 A.2d at 707.

Since "we are compelled to analyze informed consent cases under a battery theory until and unless our Supreme Court decides to recognize an informed consent cause of action grounded in negligence," *Shaw, supra; Levenson, supra,* at 132, 557 A.2d 1081, we decline appellants' invitation to extend the negligence principles contemplated by *Thompson* to the case *sub judice.* The propriety of our conclusion is further buttressed by the fact both *Shaw* and *Foflygen* post-date *Thompson.* Lastly, in *Friter v. Iolab,* 414 Pa.Super. 622, 607 A.2d 1111 (1992), a case discussing *Thompson,* we noted, "[o]ur research failed to uncover any Pennsylvania authority for imposing an independent duty on a non-physician to obtain a patient's informed consent." *Friter, supra* at 627, 607 A.2d at 1113.

Beyond our conclusion Pennsylvania law does not recognize the cause of action asserted by appellants, we find compelling reasons for not imposing upon hospitals the duty of obtaining informed consent. It is the surgeon and not the hospital who has the education, training and experience necessary to advise each patient of risks associated with the proposed surgery. Likewise, by virtue of his relationship with the patient, the physician is in the best position to know the patient's medical history and to evaluate and explain the risks of a particular operation in light of the particular medical history. Appellants' attempt to impose upon a hospital the duty not only to "ensure" that physicians obtain informed consent but also to draft the "substantive information to be disclosed", ignores these unique aspects of the physician-patient relationship.

Moreover, we are unable to conceive of how a hospital could draft, in laundry-list fashion, "the substantive information to be disclosed" for each surgery as it relates to each patient. Thus, the approach suggested by appellants would prove not only improvident but unworkable as well.

■ We also reject appellants' claim Methodist Hospital's adoption of a regulation requiring that physicians obtain informed consent "constituted a voluntary assumption of the duty to have rules and regulations to ensure that there was an informed consent." (Appellants' Reply Brief at 7.) It is highly unlikely the hospital, in adopting its rule requiring that a written consent form be signed, intended to assume a duty greater than that imposed by law. The rule merely sought to increase the likelihood physicians would obtain informed consent. It was not intended to shift the burden of obtaining informed consent from the physician to the hospital nor does it obligate the hospital to guarantee a patient tenders informed consent.

Finally, we note that every jurisdiction which has considered the issue presented here has declined to impose upon hospitals the general duty to obtain informed consent. *See e.g. Johnson v. Sears, Roebuck and Co.*, 113 N.M. 736, 832 P.2d 797 (Ct.App.1992), *cert. denied*, 113 N.M. 744, 832 P.2d 1223 (1992); *Petriello v. Kalman*, 215 Conn. 377, 576 A.2d 474 (1990) (rejecting appellants' "corporate negligence" claim); *Goss v. Oklahoma Blood Inst.*, 856 P.2d 998 (Okla.Ct.App. 1990); *Howell v. Spokane & Inland Empire Blood Bank*, 114 Wash.2d 42, 785 P.2d 815 (1990) (rejecting appellant's "corporate negligence" claim); *Kershaw v. Reichert*, 445 N.W.2d 16 (N.D.1989); *Krane v. St. Anthony Hosp. Systems*, 738 P.2d 75 (Colo.Ct.App.1987) (hospital assumes no duty by adopting standardized consent form); *Pauscher v. Iowa Methodist Med. Ctr.*, 408 N.W.2d 355 (Iowa 1987); *Lincoln v. Gupta*, 142 Mich.App. 615, 370 N.W.2d 312 (1985); *Pickle v. Curns*, 106 Ill.App.3d 734, 62 Ill.Dec. 79, 435 N.E.2d 877 (1982); *Cross v. Trapp*, 170 W.Va. 459, 294 S.E.2d 446 (1982).

Based on the foregoing, we find that paragraphs 39, 40(c), (d) and (e) of appellants' complaint fail to state a cause of action. Therefore, they were properly stricken by the trial court's Order of October 29, 1993.

Order affirmed.