SUSAN GIESE, APPELLANT AND CROSS-APPELLEE, V.
RITA COLLEEN STICE, M.D., APPELLEE, AND
BISHOP CLARKSON MEMORIAL HOSPITAL, A CORPORATION,
APPELLEE AND CROSS-APPELLANT.

567 N.W.2d 156

Filed August 1, 1997.    No. S-95-1093.

Jeffrey A. Silver for appellant.

John R. Douglas and John R. Klein, of Cassem, Tierney, Adams, Gotch & Douglas, for appellee Hospital.

.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

STEPHAN, J.

Susan Giese brought an action alleging that Rita Colleen Stice, M.D., and Bishop Clarkson Memorial Hospital (Clarkson) were negligent in connection with breast implant procedures performed on Giese at Clarkson by Dr. Stice. Giese appeals from an order of the district court for Douglas County dismissing Clarkson from the action after sustaining its demurrer on the ground that the petition failed to state a cause of action. Clarkson cross-appeals from the order of the district court overruling that part of Clarkson's demurrer in which it alleged that the statute of limitations barred Giese's claim. Dr. Stice is not a party to this appeal. For the reasons stated herein, we affirm in part, reverse in part, and remand with directions.

## PROCEEDINGS BELOW

In her petition filed on December 30, 1994, Giese alleged that she underwent three separate breast implantation procedures performed by Dr. Stice. The first, on March 21, 1989, was performed at Methodist Hospital. The subsequent procedures on April 29, 1991, and January 3, 1992, were performed at Clarkson. Giese alleged that during the second and third procedures, Dr. Stice "was assisted by nurses and other personnel" employed by Clarkson and that the implants used in those procedures "were procured by . . . Clarkson and billed to [Giese] through . . . Clarkson." There is no allegation of any agency relationship between Clarkson and Dr. Stice, and no allegation that the breast implants were defective in any manner.

Paragraph 10 of the petition contains a general allegation that employees of Clarkson "failed to exercise the degree of care or skill, or possess the degree of knowledge ordinarily exercised by others of like employment in their profession in their community or similar communities." In paragraph 11, Giese alleged that Clarkson was negligent in four particulars:

a. In failing to fully and adequately warn [Giese] of the potential side effects from breast implants.

b. In failing to obtain informed consent from [Giese].

      c. In failing to timely provide quality medical care or
consultation to [Giese].

      d. Failing to consult with other medical personnel with
respect to [Giese's] condition.

Giese asserted these same specifications of negligence against
Dr. Stice. Giese alleged that as a proximate result of the negli-
gence of Dr. Stice and Clarkson, she sustained "severe and per-
manent personal injury including, but not limited to[,] Atypical
Neurological Disease," for which she claimed damages. Giese
further alleged that she "could not and did not discover the
cause of action against the Defendants until September 1, 1994,
and that this action was commenced within one year thereof
pursuant to §25-222 Neb. Rev. Stat. 1943 (Reissue 1989)."

    Giese alleged that the Nebraska Hospital-Medical Liability
Act (NHMLA), Neb. Rev. Stat. § 44-2801 et seq. (Reissue 1993)
"may be applicable to this case." She affirmatively waived her
right to a medical review panel pursuant to the NHMLA and
alleged that the NHMLA itself was unconstitutional.

    Clarkson filed a demurrer alleging that the petition (1) failed
to state a cause of action against it and (2) was barred by the
statute of limitations period contained in Neb. Rev. Stat. § 25-222
(Reissue 1995). In an order entered on June 28, 1995, the dis-
trict court found that because Giese alleged that she "could not
and did not discover" her cause of action until September 1,
1994, the action was commenced within the limitations period
prescribed by § 25-222. Noting that Giese's counsel character-
ized her claim as one based upon informed consent, the district
court examined authorities from Nebraska and other jurisdic-
tions and concluded that the duty to obtain a patient's informed
consent to a surgical procedure was that of the attending physi-
cian and not of the hospital. The district court, therefore, sus-
tained Clarkson's demurrer on the ground that the petition
failed to state a cause of action against Clarkson and denied
Giese leave to amend "[b]ecause the defect is one that cannot be
corrected."

    On September 6, 1995, the district court denied Giese's
motion for reconsideration and dismissed Clarkson from the
case. Giese perfected a timely appeal to the Nebraska Court of
Appeals, and Clarkson cross-appealed from the district court's

ruling on the statute of limitations issue. Pursuant to our authority to regulate the caseloads of the Court of Appeals and this court, we removed the case to our docket.

## ASSIGNMENTS OF ERROR

Restated, Giese contends that the district court erred in (1) sustaining Clarkson's demurrer and (2) failing to provide her the opportunity to amend her petition following the court's decision to sustain Clarkson's demurrer.

In its cross-appeal, Clarkson contends that the district court erred in not sustaining its demurrer on the ground that Giese's claim was barred by the statute of limitations.

## STANDARD OF REVIEW

When reviewing an order sustaining a demurrer, an appellate court accepts the truth of the facts which are well pled, together with the proper and reasonable inferences of law and fact which may be drawn therefrom, but does not accept as true the conclusions of the pleader. *PSB Credit Servs. v. Rich*, 251 Neb. 474, 558 N.W.2d 295 (1997); *Baltensperger v. Wellensiek*, 250 Neb. 938, 554 N.W.2d 137 (1996).

In considering a demurrer, a court must assume that the facts pled, as distinguished from legal conclusions, are true as alleged and must give the pleading the benefit of any reasonable inference from the facts alleged, but cannot assume the existence of facts not alleged, make factual findings to aid the pleading, or consider evidence which might be adduced at trial. *Baltensperger, supra*; *Guzman v. Barth*, 250 Neb. 763, 552 N.W.2d 299 (1996).

In determining whether a cause of action has been stated, the petition is to be construed liberally. If as so construed the petition states a cause of action, a demurrer based on the failure to state a cause of action must be overruled. *State ex rel. Keener v. Graff*, 251 Neb. 571, 558 N.W.2d 538 (1997); *Crider v. Bayard City Schools*, 250 Neb. 775, 553 N.W.2d 147 (1996).

A statement of "facts sufficient to constitute a cause of action," as used in Neb. Rev. Stat. § 25-806(6) (Reissue 1995), means a narrative of events, acts, and things done or omitted which show a legal liability of the defendant to the plaintiff. *Leader Nat. Ins. v. American Hardware Ins.*, 249 Neb. 783, 545

N.W.2d 451 (1996); *Carlson v. Metz,* 248 Neb. 139, 532 N.W.2d 631 (1995).

When a demurrer to a petition is sustained, a court must grant leave to amend the petition unless it is clear that no reasonable possibility exists that amendment will correct the defect. *Thrift Mart v. State Farm Fire & Cas. Co.,* 251 Neb. 448, 558 N.W.2d 531 (1997); *Hynes v. Hogan,* 251 Neb. 404, 558 N.W.2d 35 (1997).

When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Ackles v. Luttrell, ante* p. 273, 561 N.W.2d 573 (1997); *Ethanair Corp. v. Thompson, ante* p. 245, 561 N.W.2d 225 (1997).

## ANALYSIS

*Applicable Law.*

There is a threshold issue of whether this case is governed by the provisions of the NHMLA. Giese alleged in her petition that the NHMLA "may be applicable," and because of the procedural posture of the case at the time of dismissal, Clarkson was never required to respond to this substantive allegation.

Physicians, hospitals, and other health care providers may elect to "qualify" under the NHMLA by filing proof of financial responsibility with the Department of Insurance and agreeing to pay periodic surcharges levied to create and maintain the Excess Liability Fund established by the NHMLA. See § 44-2824. The substantive provisions of the NHMLA provide the exclusive remedy by which a patient may assert professional liability claims against the health care provider unless the patient filed an election not to be bound by the NHMLA prior to receiving professional services. If the health care provider does not elect to qualify under the NHMLA, its liability for professional negligence is determined under doctrines of common law. See § 44-2821. See, also, *Prendergast v. Nelson,* 199 Neb. 97, 256 N.W.2d 657 (1977).

The NHMLA defines "informed consent" as follows:

> Informed consent shall mean consent to a procedure based on information which would ordinarily be provided to the patient under like circumstances by health care providers engaged in a similar practice in the locality or in similar localities. Failure to obtain informed consent shall

include failure to obtain any express or implied consent for any operation, treatment, or procedure in a case in which a reasonably prudent health care provider in the community or similar communities would have obtained an express or implied consent for such operation, treatment, or procedure under similar circumstances.

§ 44-2816. We have held that the same definition of informed consent applies in a professional negligence action governed by the common law. See *Jones v. Malloy*, 226 Neb. 559, 412 N.W.2d 837 (1987).

Unless tolled by the provisions of Neb. Rev. Stat. § 25-213 (Reissue 1995), an action for damages against a health care provider under the NHMLA must be commenced

within two years next after the alleged act or omission in rendering or failing to render professional services providing the basis for such action, except that if the cause of action is not discovered and could not be reasonably discovered within such two-year period, the action may be commenced within one year from the date of such discovery or from the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier.

§ 44-2828. This language is identical in all material respects to that contained in § 25-222, which applies to professional negligence actions governed by the common law.

Because Giese alleged that the NHMLA "may be applicable" to her claim and also because there is nothing in the record to the contrary, we will apply the substantive provisions of the NHMLA in resolving this appeal. We note, however, that the result would be the same under the applicable principles of common law outlined above. See *Gilbert v. Archbishop Bergan Mercy Hospital*, 228 Neb. 148, 421 N.W.2d 760 (1988) (holding that it was not prejudicial error to give jury instruction based on NHMLA's definition of standard of care in action against hospital which was not qualified under NHMLA, where common-law definition was identical).

*Informed Consent.*

Giese's first two specifications of negligence present an issue of first impression in Nebraska: Does a hospital have an inde-

pendent duty to warn a patient of surgical risks in order to obtain the patient's informed consent to a surgical procedure which is to be performed by a surgeon who is not an agent of the hospital? In order to state a cause of action based upon negligence, a plaintiff must allege facts supporting the existence of a legal duty, a breach of that duty by the defendant, and damages proximately caused by the breach. See, *Robinson v. Bleicher*, 251 Neb. 752, 559 N.W.2d 473 (1997); *Hand v. Starr*, 250 Neb. 377, 550 N.W.2d 646 (1996). The existence of a legal duty upon which actionable negligence can be predicated is a question of law dependent on the facts in a particular situation. See, *Olson v. SID No. 177*, 251 Neb. 380, 557 N.W.2d 651 (1997); *Anderson/Couvillon v. Nebraska Dept. of Soc. Servs.*, 248 Neb. 651, 538 N.W.2d 732 (1995).

The vast majority of courts considering the issue have "declined to impose upon hospitals the general duty to obtain informed consent." See *Kelly v. Methodist Hosp.*, 444 Pa. Super. 427, 434, 664 A.2d 148, 151 (1995) (stating, in context of action brought under theory of corporate negligence, that in "every jurisdiction which has considered the issue," no court has imposed general duty upon hospital to obtain patient's informed consent). Typically, courts reach this conclusion after determining that it is the treating physician who has the education, expertise, skill, and training necessary to treat a patient and determine what information a patient must have in order to give informed consent. See, e.g., *Johnson v. Sears, Roebuck & Co.*, 113 N.M. 736, 832 P.2d 797 (N.M. App. 1992). These courts recognize that nurses and other nonphysician hospital employees do not normally possess knowledge of "a particular patient's medical history, diagnosis, or other circumstances which would enable the employee to fully disclose all pertinent information to the patient." *Id.* at 738, 832 P.2d at 799. See, also, *Schloendorff v. New York Hospital*, 211 N.Y. 125, 105 N.E. 92 (1914), *overruled on other grounds by Bing v. Thunig*, 2 N.Y.2d 656, 143 N.E.2d 3, 163 N.Y.S.2d 3 (1957) (hospital which did not employ surgeon had no duty to obtain patient's informed consent to surgery); *Krane v. Saint Anthony Hosp. Systems*, 738 P.2d 75, 77 (Colo. App. 1987) ("hospital does not generally have a duty to advise the patient prior to surgery as to

the surgical procedure to be employed and the risks involved and, therefore, has no duty to obtain an informed consent similar to that which the surgeon is obligated to obtain"); *Ackerman v. Lerwick*, 676 S.W.2d 318, 321 (Mo. App. 1984) ("duty to inform rests with the physician and requires the exercise of delicate medical judgment. The hospital is not required to interfere with the physician-patient relationship"); *Petriello v. Kalman*, 215 Conn. 377, 576 A.2d 474 (1990) (hospital has no duty to obtain patient's informed consent to surgery to be performed by surgeon who is not hospital employee); *Goss v. Oklahoma Blood Institute*, 856 P.2d 998 (Okla. App. 1990) (hospital has no duty to inform patient of material risks of procedure prescribed by patient's physician, nor must it inform patient of available alternatives); *Ritter v. Delaney*, 790 S.W.2d 29 (Tex. App. 1990) (hospital under no obligation to obtain patient's informed consent to surgery merely because physician had directed nurse to have patient sign consent form); *Kershaw v. Reichert*, 445 N.W.2d 16 (N.D. 1989) (hospital generally has no duty to obtain informed consent); *Pauscher v. Iowa Methodist Medical Center*, 408 N.W.2d 355, 362 (Iowa 1987) (no duty on part of hospital "to inform a patient of matters that lie at the heart of the doctor-patient relationship"); *Baltzell v. Baptist Medical Center*, 718 S.W.2d 140 (Mo. App. 1986) (hospital had no duty to inform patient of risk of infection from surgeon where surgeon not agent of hospital); *Lincoln v Gupta*, 142 Mich. App. 615, 370 N.W.2d 312 (1985) (physician had exclusive duty to inform patient of risks associated with medical procedures); *Pickle v. Curns*, 106 Ill. App. 3d 734, 435 N.E.2d 877 (1982) (hospital has no duty to inform patient of surgical risks); *Cross v. Trapp*, 170 W. Va. 459, 294 S.E.2d 446 (1982) (hospital had no duty to obtain informed consent in absence of agency relationship with physician); *Parr v. Palmyra Park Hospital*, 139 Ga. App. 457, 460, 228 S.E.2d 596, 598 (1976) ("[t]o require a hospital to contact a patient to discuss the risks of a surgical procedure involving the transfusion of blood would be a presumptuous invasion of the province of the physician, on whom rests the responsibility of the patient's welfare").

Giese relies on *Urban v. Spohn Hosp.*, 869 S.W.2d 450 (Tex. App. 1993), and *Keel v. St. Elizabeth Medical Center*, 842

S.W.2d 860 (Ky. 1992), in urging us to recognize a duty on the part of a hospital to obtain a patient's informed consent to surgery. In *Urban*, the plaintiff alleged that she told the hospital nurses that she did not want and had not consented to a surgical procedure, and claimed that the nurses were negligent in not communicating her wishes to the surgeon. In reversing summary judgment for the hospital, the Texas Court of Appeals concluded that it could not state, as a matter of law, that the nurses did not have a duty to report the patient's statements to the surgeon. In *Keel*, the Supreme Court of Kentucky "note[d] incidentally," 842 S.W.2d at 862, that a hospital had a duty to obtain the informed consent of a patient before performing a CT scan ordered by the patient's physician but performed by hospital personnel. We view these cases as factually distinguishable and not supportive of a general proposition that a hospital has an independent duty to warn a patient of surgical risks in order to obtain the patient's informed consent to a particular surgical procedure which is to be performed by a physician who is not a hospital employee.

Giese argues that because the statutory definition of "informed consent" found at § 44-2816 uses the term "health care providers," which can include both physicians and hospitals, see § 44-2803, a hospital and a physician have a joint duty to obtain informed consent. This argument was specifically rejected by the appellate courts of the State of Washington in *Alexander v. Gonser*, 42 Wash. App. 234, 711 P.2d 347 (1985), and *Howell v. Blood Bank*, 114 Wash. 2d 42, 785 P.2d 815 (1990). Both courts held that to impose a general duty upon all entities meeting the statutory definition of "health care provider" would result in an unwarranted imposition on the physician-patient relationship and would be " 'far more disruptive than beneficial to a patient.' " *Howell*, 114 Wash. 2d at 55, 785 P.2d at 822 (quoting *Alexander, supra*). We agree with this rationale and reject Giese's contention that a hospital has a duty to obtain informed consent merely because it meets the statutory definition of "health care provider" as that term is used in § 44-2816.

Finally, Giese argues that Clarkson should have a duty to obtain informed consent because it supplied the implants used

in her 1991 and 1992 surgeries. Giese contends that a representative of the hospital's purchasing department should have counseled her prior to surgery regarding possible side effects associated with the implants. We conclude that this was not legally required and would constitute an unwarranted interference in the physician-patient relationship.

We agree with the majority of jurisdictions which have considered this issue. We hold that a hospital has no independent duty to obtain a patient's informed consent to a surgical procedure to be performed by a physician who is not an employee of the hospital and that such duty lies exclusively with the treating physician. The district court was, therefore, correct in sustaining Clarkson's demurrer with respect to the allegations contained in paragraphs 11(a) and 11(b) of Giese's petition and in finding that the defect could not be cured by amendment.

*Other Specifications of Negligence.*

In paragraphs 11(c) and 11(d) of her petition, Giese alleges that Clarkson was negligent in "failing to timely provide quality medical care or consultation" and "failing to consult with other medical personnel" with respect to her condition. These allegations, which are unrelated to the issue of informed consent, were not addressed by the district court in its order sustaining Clarkson's demurrer. That order refers to a statement by Giese's counsel that " '[t]he cause of action is really based on informed consent.' " However, Giese's counsel represented during oral argument on appeal that the allegations in paragraphs 11(c) and 11(d) pertain to theories of recovery other than informed consent, which were never abandoned. Since there is nothing in the record establishing that these allegations were ever stricken or withdrawn, we must consider them in determining whether the petition is sufficient to withstand Clarkson's demurrer.

Clarkson contends in its brief that these allegations are "vague" and "relate to obligations owed by a physician, not a hospital." Brief for appellee at 24. While the allegations are vague and general in nature, it has long been the law of Nebraska that even a general allegation of negligence is good against a demurrer. *Crawford v. Ham*, 209 Neb. 802, 311

N.W.2d 896 (1981). We have held that "[a]s a general rule, hospital staff members lack authority to alter or depart from an attending physician's order for a hospital patient and lack authority to determine what is a proper course of medical treatment for a hospitalized patient." *Jensen v. Archbishop Bergan Mercy Hosp.*, 236 Neb. 1, 8, 459 N.W.2d 178, 183 (1990). However, we have recognized that under some circumstances, hospital personnel have a duty to communicate with an attending physician concerning a hospitalized patient. *Critchfield v. McNamara*, 248 Neb. 39, 532 N.W.2d 287 (1995) (holding that hospital employees had duty to report change in patient's condition to appropriate medical personnel).

Applying these authorities and the required liberal construction to paragraphs 11(c) and 11(d) of the petition, we conclude that no cause of action is stated against Clarkson by paragraph 11(c) because Giese alleges no facts upon which Clarkson would have a duty to provide "medical care or consultation" to her. See *Jensen, supra*. However, the allegation in paragraph 11(d) that Clarkson "failed to consult with other medical personnel with respect to [Giese's] condition" and the allegations of proximately caused injury and damages contained in paragraphs 12 and 13 of the petition are sufficient to state a cause of action against Clarkson. See *Critchfield, supra*. Because one of the four specifications of negligence directed at Clarkson was legally sufficient, the petition stated a cause of action unless barred by the statute of limitations.

*Statute of Limitations.*

We next address Clarkson's cross-appeal, in which it contends that the district court should have sustained its demurrer on the ground that the petition was barred by the statute of limitations. When it is apparent from the face of a petition that the cause of action asserted is ostensibly barred by the statute of limitations, the petition is demurrable as failing to state a cause of action unless the plaintiff alleges some excuse which tolls the operation and bar of the statute. See, *Vanice v. Oehm*, 247 Neb. 298, 526 N.W.2d 648 (1995); *Dalition v. Langemeier*, 246 Neb. 993, 524 N.W.2d 336 (1994). A cause of action for professional negligence accrues and the statute of limitations begins to run at

the time of the act or omission alleged to constitute negligence. See *Zion Wheel Baptist Church v. Herzog*, 249 Neb. 352, 543 N.W.2d 445 (1996). The last date on which Giese alleges to have received care at Clarkson is January 3, 1992, more than 2 years before the petition was filed. In paragraph 14 of the petition, Giese alleges that "she could not and did not discover the cause of action against the Defendants until September 1, 1994." The issue, therefore, is whether Giese has adequately alleged the tolling of the 2-year limitation period by her failure to "discover" the claim within the 2-year period.

In *Zion Wheel Baptist Church, supra,* we held that because the petition alleging professional negligence was filed more than 2 years after the cause of action accrued, the plaintiff was required to "allege *why* its cause of action was not discovered and could not reasonably have been discovered within such 2-year period." (Emphasis supplied.) 249 Neb. at 358, 543 N.W.2d at 450. We further noted that "[d]iscovery occurs when the party knows of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery of facts constituting the basis of the cause of action." *Id.*, citing *Association of Commonwealth Claimants v. Moylan*, 246 Neb. 88, 517 N.W.2d 94 (1994). See, also, *Gordon v. Connell*, 249 Neb. 769, 545 N.W.2d 722 (1996).

Under this authority, a plaintiff seeking to invoke the "discovery" clause to toll the statute of limitations for professional negligence must allege more than a conclusion that the cause of action was not and reasonably could not have been discovered within the 2-year period. The petition must allege facts explaining *why* this is so. Giese did not allege such facts in her petition, and Clarkson's demurrer should, therefore, have been sustained on the grounds that the claim was barred by the statute of limitations. However, since it may be possible to cure this defect by amendment, Giese should be given leave to file an amended petition following remand of this action to the district court.

## CONCLUSION

In summary, the district court correctly found that Clarkson had no independent legal duty to warn Giese of surgical risks and to obtain her informed consent to the surgery performed by

Dr. Stice, and that this deficiency in the petition could not be cured by amendment. However, since the petition also alleged a breach of the legally cognizable duty of hospital personnel to consult with medical personnel, the petition was sufficient to state a cause of action unless barred by the statute of limitations. Clarkson's demurrer should have been sustained because it was apparent from the face of the petition that the statute of limitations had expired and because Giese did not allege facts sufficient to establish tolling. Giese should have been given leave to amend the tolling allegation only. We, therefore, reverse, and remand with directions to allow Giese 14 days to amend her petition if she wishes to do so.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.

McCORMACK, J., concurring.

I agree with the majority that under the facts presented in this case there is no agency relationship between the hospital and the physician which would require the hospital to obtain the patient's informed consent. I do feel, however, that with the increasing consolidation of hospital services and physician practices, a case could be made for finding the hospital liable for the physician's failure to obtain informed consent where the hospital actually owns or controls the physician's practice or where both the hospital and the physician's practice are owned or controlled by another corporation which sets policy for both the hospital and the physician's practice.