NANCY J. WEAVER, APPELLANT, V. DR. E.C. CHEUNG AND PLATTE VALLEY MEDICAL GROUP, P.C., APPELLEES.
576 N.W.2d 773

Filed April 3, 1998.   No. S-96-506.

P. Stephen Potter, P.C., for appellant.

William M. Lamson, Jr., and David J. Schmitt, of Kennedy, Holland, DeLacy & Svoboda, for appellees.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MCCORMACK, JJ.

STEPHAN, J.

This is a professional negligence action brought by Nancy J. Weaver against Dr. E.C. Cheung and Platte Valley Medical Group, P.C. (Platte Valley). Weaver appeals from an order of the district court for Buffalo County granting summary judgment in favor of Cheung and Platte Valley based upon its finding that Weaver's claim was barred by the statute of limitations. Finding no error, we affirm the judgment of the district court.

### FACTUAL AND PROCEDURAL BACKGROUND

In her petition filed on January 19, 1995, Weaver alleged that Cheung, while employed by Platte Valley, was negligent in providing medical diagnosis and treatment. Specifically, Weaver alleged that Cheung erroneously determined that she suffered from cirrhosis of the liver and thereafter treated her for that condition. She further alleged that another physician subsequently advised her that she did not have liver disease, but, rather, a condition known as celiac sprue. Weaver claimed permanent injury resulting from the misdiagnosis and improper treatment, for which she sought general and special damages. Cheung and

Platte Valley filed an answer in which they generally denied Weaver's allegations of negligence and asserted as an affirmative defense that the action was "barred by the applicable statute of limitations, Neb. Rev. Stat. §44-2828 (Reissue 1993)." Weaver did not file a reply.

Cheung and Platte Valley moved for summary judgment on grounds that Weaver was unable to sustain her burden of proof and that her action was time barred. At a hearing on April 22, 1996, Cheung and Platte Valley narrowed the scope of the motion to their statute of limitations defense, and the district court received evidence pertaining to that issue. The evidence is summarized as follows:

Weaver consulted Dr. David Hult of Gothenburg, Nebraska, on December 4, 1991, with complaints of severe fatigue and swelling of her abdomen and lower extremities. Tests ruled out cancer. Weaver was admitted to Good Samaritan Hospital in Kearney on December 16, 1991, where she was examined by Cheung and Dr. G.K. Bascom, both of whom were associated with Platte Valley at that time. After additional diagnostic studies were done and medication was prescribed by Cheung, Weaver was discharged from the hospital on December 23, 1991. She was readmitted to Good Samaritan Hospital on January 17, 1992. After performing a liver biopsy which was reported as normal, Cheung diagnosed cirrhosis of the liver and treated Weaver based upon that diagnosis. Weaver recalled that she was last treated by Cheung sometime in May 1992. Cheung stated in his affidavit that he treated Weaver "through at least April 27, 1992" and that he "may have also rendered care and treatment through May of 1992." There is some evidence that Weaver may have received treatment from another physician at Platte Valley in June or July 1992, but not later than July 14, 1992. At approximately this time, Cheung moved to another state and did not return to Nebraska.

Weaver's health problems persisted following this period of treatment. She was seen by Hult at various times in 1992 and 1993. Weaver arranged to be examined by Dr. John Bloor at the Hepatology Clinic at University Hospital in Denver, Colorado, on February 1, 1994. Bloor performed additional diagnostic studies and advised Weaver on the following day that in his

opinion she did not have liver disease. On April 13 or 14, 1994, Weaver was advised by another physician in Colorado that she suffered from celiac sprue, a disorder which made her allergic to certain foods. Bloor concluded that Weaver also suffered from restrictive lung disease and dysphagia, two chronic medical problems resulting from "severe prolonged malnutrition caused by the delay in treatment of her celiac sprue."

In its order of April 25, 1996, granting the motion for summary judgment, the district court held that the 2-year limitations period contained in Neb. Rev. Stat. § 44-2828 (Reissue 1993) began to run on Weaver's claim no later than July 14, 1992, the last possible date on which she could have been treated by Cheung. The district court further determined that Weaver discovered her cause of action within the 2-year period and that her claim was therefore barred when the action was commenced on January 19, 1995.

## ASSIGNMENT OF ERROR

Weaver contends that the district court erred in granting summary judgment in favor of Cheung and Platte Valley based upon its determination that her cause of action against them was barred by the statute of limitations.

## STANDARD OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Darrah v. Bryan Memorial Hosp.*, 253 Neb. 710, 571 N.W.2d 783 (1998); *Farmers Union Co-op Ins. Co. v. Allied Prop. & Cas.*, 253 Neb. 177, 569 N.W.2d 436 (1997); *Schendt v. Dewey*, 252 Neb. 979, 568 N.W.2d 210 (1997).

The determination of which statute of limitations applies is a question of law that an appellate court must decide independently of the conclusion reached by the trial court. *Central States Resources v. First Nat. Bank*, 243 Neb. 538, 501 N.W.2d 271 (1993). If the facts in a case are undisputed, the issue as to when the professional negligence statute of limitations began to run is a question of law. *Tiwald v. Dewey*, 221 Neb. 547, 378 N.W.2d 671 (1985).

## ANALYSIS

This case is controlled by the Nebraska Hospital-Medical Liability Act, Neb. Rev. Stat. § 44-2801 et seq. (Reissue 1993). Section 44-2828 of the act provides in part:

> [A]ny action to recover damages based on alleged malpractice or professional negligence or upon alleged breach of warranty in rendering or failing to render professional services shall be commenced within two years next after the alleged act or omission in rendering or failing to render professional services providing the basis for such action, except that if the cause of action is not discovered and could not be reasonably discovered within such two-year period, the action may be commenced within one year from the date of such discovery or from the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier.

We have held that with respect to a professional negligence claim against a physician, the 2-year period of limitations specified in this statute begins to run when the treatment rendered after and relating to the allegedly wrongful act or omission is completed. *Kocsis v. Harrison,* 249 Neb. 274, 543 N.W.2d 164 (1996); *Healy v. Langdon,* 245 Neb. 1, 511 N.W.2d 498 (1994); *Ourada v. Cochran,* 234 Neb. 63, 449 N.W.2d 211 (1989); *Barry v. Bohi,* 221 Neb. 651, 380 N.W.2d 249 (1986).

Weaver contends that Cheung negligently misdiagnosed her condition as cirrhosis of the liver on or about January 17, 1992, and treated her for this condition "until at least May of 1992." Brief for appellant at 4. The district court correctly determined that while there was conflicting evidence as to when the period of treatment ended, it could have been no earlier than April 27, 1992, and no later than July 14, 1992. We agree with the district court that regardless of whether the 2-year limitations period is computed from the earlier or the later of these dates, it had expired before this action was commenced on January 19, 1995.

Weaver contends that her petition was timely because it was filed within 1 year after February 2, 1994, the date on which she was advised by Bloor that she did not have liver disease and, therefore, "discovered" her cause of action. This argument misconstrues the nature of the "discovery exception" contained in

§ 44-2828. The statute does not permit a plaintiff to elect between the 2-year and 1-year limitations periods contained therein. Rather, it provides that

> if the cause of action is not discovered and could not be reasonably discovered within such two-year period, the action may be commenced within one year from the date of such discovery or from the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier.

(Emphasis supplied.) § 44-2828. The discovery exception is a tolling provision which permits the filing of an action after the 2-year period only in those circumstances where the cause of action was not discovered and could not reasonably have been discovered within that period.

As the district court noted and Weaver acknowledges, our decision in *Ames v. Hehner,* 231 Neb. 152, 435 N.W.2d 869 (1989), is directly applicable to this case. In *Ames,* the defendant physician performed surgery on February 13, 1981, and continued to treat the patient for postoperative complications until December 1982, without diagnosing the cause of the complications. In August 1984, another physician diagnosed the problem as a permanent neurologic condition resulting from improper arm positioning during the 1981 surgery. The patient filed suit in June 1985, alleging negligence in the performance of the surgery and postoperative treatment. The physician's demurrer was sustained on grounds that the action was time barred under Neb. Rev. Stat. § 25-222 (Reissue 1985), which contained a 2-year limitations period and 1-year discovery exception identical in all material respects to § 44-2828. We affirmed, holding that the 2-year limitations period was applicable notwithstanding the fact that plaintiff did not discover the cause of action until approximately 4 months before the expiration of that period. Two judges dissented, contending that a petition alleging professional negligence on the part of a physician should be considered timely if it is filed either within 2 years of last treatment or within 1 year of discovery of the cause of action.

In the present case, Weaver urges us to overrule *Ames* and adopt the rationale advanced in the dissenting opinions in that

case. She contends, as did the dissenters in *Ames*, that a patient who does not discover a professional negligence cause of action against a physician until shortly before the expiration of the 2-year limitations period is unfairly deprived of an opportunity to seek redress. She argues that the rule applied in *Ames* "does not take into account equity principles such as are apparent in the current case" and "would leave a Plaintiff such as Ms. Weaver perhaps days, weeks or only a few months to get a petition on file after discovering apparent negligence . . . ." Brief for appellant at 9.

Weaver correctly notes the judicial origin of the doctrine permitting calculation of the limitations period from the date when the plaintiff discovers a cause of action based upon professional negligence. In *Spath v. Morrow,* 174 Neb. 38, 115 N.W.2d 581 (1962), the plaintiff discovered in 1960 that a portion of a surgical needle had been left in her body during a procedure performed in 1951. At that time, Neb. Rev. Stat. § 25-208 (Reissue 1956) required that an action for malpractice be commenced within 2 years; it contained no "discovery" provision. Although the plaintiff had not been treated by the defendant physicians since 1951, we held that the action filed in 1961 was timely, reasoning that "the cause of action in this case did not accrue until the plaintiff discovered, or in the exercise of reasonable diligence should have discovered, that a foreign object had been left in her body." 174 Neb. at 43, 115 N.W.2d at 585. See, also, *Acker v. Sorensen,* 183 Neb. 866, 165 N.W.2d 74 (1969).

However, when the Legislature codified the discovery rule, first in § 25-222, applicable to professional negligence actions, and then in § 44-2828, applicable to health care providers who elect to qualify under the Nebraska Hospital-Medical Liability Act, it placed a restriction on its application which we are not free to ignore. Both statutes establish a general 2-year limitations period, subject to an exception that an action may be commenced within 1 year from discovery where "the cause of action is not discovered and could not be reasonably discovered" within the 2-year period. § 25-222; § 44-2828. We have interpreted both statutes to require a plaintiff claiming the applicability of the discovery exception to allege facts to establish why the cause of action was not discovered and could not rea-

sonably have been discovered within the 2-year period. *Giese v. Stice,* 252 Neb. 913, 567 N.W.2d 156 (1997) (interpreting § 44-2828); *Zion Wheel Baptist Church v. Herzog,* 249 Neb. 352, 543 N.W.2d 445 (1996) (interpreting § 25-222). In applying § 25-222 in a case where an architect was alleged to have been negligent in supervising the construction of a building, we held that the 2-year limitations period began to run when the building was completed and stated that if the plaintiff

> proves by a preponderance of the evidence that the cause of action was not discovered and could not reasonably have been discovered within such a 2-year period, then an action may be commenced "within one year from the date of such discovery or from the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier . . . ."

*Board of Regents v. Wilscam Mullins Birge,* 230 Neb. 675, 683, 433 N.W.2d 478, 483 (1988) (quoting § 25-222). The same burden of proof would apply in an action governed by § 44-2828.

In the context of statutes of limitations, "discovery" refers to the fact that one knows of the existence of an injury or damage, regardless of whether there is awareness of a legal right to seek redress in court. *Gordon v. Connell,* 249 Neb. 769, 545 N.W.2d 722 (1996); *Lindsay Mfg. Co. v. Universal Surety Co.,* 246 Neb. 495, 519 N.W.2d 530 (1994); *Board of Regents v. Wilscam Mullins Birge, supra.* Discovery of a cause of action occurs when there has been discovery of facts constituting the basis of the cause of action or discovery of the existence of " 'facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery . . . .' " *Giese v. Stice,* 252 Neb. at 925, 567 N.W.2d at 165; *Gordon v. Connell, supra.*

Weaver's petition contained no allegation that she was unable to discover her cause of action within the 2-year limitations period. Although the incorrect diagnosis of cirrhosis of the liver was not confirmed until February 2, 1994, clearly within the 2-year period, Weaver admitted in her deposition that "all along [she] questioned" Cheung's diagnosis and that her personal physician advised her that he was "puzzled" about Cheung's diagnosis in light of the fact that her liver biopsy was reported

as normal. Moreover, based upon her personal knowledge of cirrhosis of the liver, Weaver considered her continuing symptoms to be inconsistent with that disease. Prior to her evaluation by Bloor, Weaver contacted the Liver Foundation to obtain the names of physicians from whom she could obtain a second opinion regarding her medical problems; she requested the names of physicians outside Nebraska "because [she] wasn't too happy with the way [she] had been treated" by Cheung. These facts establish notice sufficient to constitute discovery of the cause of action even before the misdiagnosis was confirmed on February 2, 1994. See *Norfolk Iron & Metal v. Behnke*, 230 Neb. 414, 432 N.W.2d 18 (1988) (holding that discovery of professional negligence claim against accountant occurred when president of company developed "gut feeling" that inventory was missing, rather than on subsequent date of audit confirming shortage). Thus, the uncontroverted evidence reflects that Weaver discovered her cause of action well within the 2-year limitations period, and there is no evidence in the record that she was denied an opportunity to seek redress before her action became time barred. On these facts, we discern no principle of equity or other reason sufficient to warrant a departure from our holding in *Ames v. Hehner*, 231 Neb. 152, 435 N.W.2d 869 (1989), and the plain language of § 44-2828. The judgment of the district court is therefore affirmed.

AFFIRMED.